Argued and submitted March 26, affirmed June 9, 1982

ROTH et al,
*Petitioners,*
*v.*
LAND CONSERVATION AND DEVELOPMENT
COMMISSION et al,
*Respondents.*

(CA A22117)

646 P2d 85

John C. Pinkstaff, McMinnville, argued the cause and filed the brief for petitioners.

Richard David Wasserman, Assistant Attorney General, argued the cause for respondents Land Conservation and Development Commission and Department of Land Conservation and Development. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Richard D. Faus, City Attorney, Newberg, argued the cause and filed the brief for respondent City of Newberg.

Daryl S. Garrettson, Yamhill County Counsel, McMinnville, argued the cause and filed the brief for respondent Yamhill County.

George H. Layman, Newberg, waived appearance for respondent Newberg School District 29J.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioners seek judicial review of that portion of an acknowledgment order issued by the Land Conservation and Development Commission (LCDC), which, according to petitioners, "enlarges the [City of] Newberg['s] urban growth boundary [UGB] to include an 18.8 acre parcel for a proposed school site." This case is a classic illustration of the pitfalls involved in LCDC's simultaneously considering a goal issue in two distinct proceedings designed for different purposes: adjudicatory appeals before the Land Use Board of Appeals (LUBA) (in which LCDC must pass on any goal questions), and acknowledgment proceedings before LCDC pending at the same time. It may also suggest that LUBA and LCDC may not be exerting sufficient effort to coordinate their functions to assure the expeditious resolution of land use decisions.

On June 25, 1980, Yamhill County's Board of Commissioners (County) approved expansion of the City's UGB at the behest of the local school district to include a parcel designated in the comprehensive plan for future use as a school site. Petitioners, who live near the parcel, objected to the expansion and, as part of a neighborhood group, brought the matter before LUBA. On December 11, 1980, LUBA ruled that the County had not sufficiently considered the need for, alternatives to and compatibility of the addition of the parcel to the land within the UGB, and remanded the case back to the County. *Abrego v. Yamhill County,* 2 Or LUBA 101 (1980) *(Abrego I).* On remand, on March 18, 1981, the County affirmed its decision to include the parcel in the UGB and made additional findings. Petitioners again sought review before LUBA. On August 12, 1981, LUBA, ruling that the County had failed to meet the "compelling reasons and facts" test of Statewide Land Use Goal 2 as incorporated in Goal 14 to justify the UGB expansion, again remanded the matter to the County. *Abrego v. Yamhill County,* 3 Or LUBA 350 (1981) *(Abrego II).*

In June, 1979, prior to the first of the LUBA proceedings in *Abrego,* the City had requested LCDC to acknowledge its comprehensive plan, including the UGB. There followed a continuance order and a second acknowledgment request. On December 23, 1980, LCDC issued a

second continuance order outlining statewide goal deficiencies, including several relating to Goal 14. None of the specific deficiencies about which petitioners had complained to LUBA were among those listed. On April 17, 1981, the City submitted its third request for acknowledgment. Before LCDC in the acknowledgment proceedings, petitioners raised objections similar to those raised by them before LUBA in *Abrego I and II*. It was at this point that the *Abrego* proceedings became inconsistently juxtaposed with the acknowledgment process. On August 6, 1981, LCDC voted to approve LUBA's proposed opinion and order in *Abrego II* remanding the UGB to the County. Notwithstanding that action, LCDC, on the same date, voted to approve the City's comprehensive plan, including the UGB, within which the disputed parcel was included. The acknowledgment order was issued August 24, 1981.

It is the facial inconsistency between *Abrego II* and the LCDC acknowledgment order that provides the thrust of petitioners' appeal to this court, for it appears that, despite their successes in the *Abrego* proceedings, petitioners were now being told by LCDC that those efforts were all for naught. In their two assignments of error, petitioners contend that LCDC erred in (1) not finding (as had been found by both LUBA and LCDC in *Abrego II)* violations of Goal 2 requirements; (2) not finding a violation of Goal 2's coordination requirements as a result of the inconsistency between *Abrego I and II* and the LCDC acknowledgment; (3) not finding a Goal 14 violation; and (4) not finding the City's findings inadequate concerning Goals 2 and 14 with respect to including the disputed parcel within the UGB.

LCDC, respondent in this appeal, raises two arguments in support of the acknowledgment order. First, it contends that petitioners' objections were not properly before LCDC, because by administrative rule[1] LCDC had

---

[1] OAR 660-03-040, as amended in 1980, provided in pertinent part:

"(2) The order of continuance shall specify the deficiencies which need to be corrected and a time certain within which the corrections shall be submitted to the department for review as part of the acknowledgment request. * * *

"(3) The Department shall, upon receipt of the corrections, notify all persons who are entitled to notice of the jurisdiction's acknowledgment

limited its review, after issuance of a continuance order, to those deficiencies the continuance order specifically required to be corrected. The real question in our review of LCDC's order, however, is whether petitioners' objections are properly before *us*.

■■ The continuance order is not judicially reviewable except as to goals with which the comprehensive plan is determined to be in compliance. See *1000 Friends of Oregon v. LCDC*, 56 Or App 759, 643 P2d 654 (1982). Petitioners could not have sought judicial review as to any Goal 14 issues prior to the LCDC acknowledgment order that is before us now, because neither continuance order determined the plan to be in compliance with that goal. It follows that petitioners are not precluded from raising alleged Goal 14 deficiencies in this proceeding. This court is not bound by the fact that LCDC in its continuance order ignored a previously identified deficiency involving the same goal. Whatever may have been the effect of the cited administrative rule on LCDC's internal procedures, we conclude that petitioners are not precluded from raising their Goal 14 objections on judicial review of an acknowledgment order, entered after a continuance order has enumerated other Goal 14 deficiencies to be corrected.

LCDC next argues that the requirements of Goal 2 are not applicable until the UGB is "established" during the acknowledgment process. Goal 14 provides in relevant part:

"Establishment and change of the [urban growth] boundaries shall be based upon consideration of the following factors:

request under OAR 660-03-015 of the time and place where the corrections may be inspected and the time within which *objections* or comments *to the corrections* must be submitted.

"* * * * *

"(6) When the Commission resumes its consideration of the acknowledgment request, *it shall limit its review to the question of whether the corrections submitted comply with the Statewide Planning Goals,* unless other goals are affected by the changes. If the Commission finds that with the corrections submitted the jurisdiction's comprehensive plan and implementing ordinances do comply with the Statewide Planning Goals, it shall enter an order granting the acknowledgment request. * * *" (Emphasis supplied.) (Repealed by LCDC; December 15, 1981.)

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) Need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

"(4) Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7) Compatibility of the proposed urban uses with nearby agricultural activities.

"The results of the above considerations shall be included in the comprehensive plan. *In the case of a change of a boundary, a governing body proposing such change in the boundary separating urbanizable land from rural land, shall follow the procedures and requirements as set forth in the Land Use Planning Goal (Goal 2) for goal exceptions.*" (Emphasis supplied.)

Goal 2 provides in relevant part:

"If the exception to the goal is adopted, then the compelling reasons and facts for that conclusion shall be completely set forth in the plan and shall include:

"(a) Why these other uses should be provided for;

"(b) What alternative locations within the area could be used for the proposed uses;

"(c) What are the long term environmental, economic, social and energy consequences to the locality, the region or the state from not applying the goal or permitting the alternative use;

"(d) A finding that the proposed uses will be compatible with other adjacent uses."

If the City's adoption of the UGB, including the addition of the disputed parcel while the acknowledgment request was pending before LCDC, were a "change" in an "established" UGB, the test of Goal 14 compliance would be as LUBA expressed it in *Abrego II:*

"Before an urban growth boundary can be expanded the proponent of the expansion has the burden of showing by compelling reasons and facts that the uses to be accommodated by the expansion cannot be located within the urban growth boundary." 3 Or LUBA at 354.

The issue is whether the City's adoption of the UGB, in the form later acknowledged, was a "change" in an "established" UGB within the meaning of Goal 14. LCDC considered that the acknowledgment proceeding concerned the "establishment" of the UGB and that prior to acknowledgment no UGB could be "established." That interpretation of the goal is evidenced by the comments of one of the commissioners at the August 6, 1981, hearing:

"Well, but frequently in the establishment of urban growth boundaries, there are changes made. We send back urban growth boundaries and they are trimmed back to accommodate changes but it is still part of the establishment process and that applies to whether the factors in Goal 14 have been met * * *."

Logically, there can be only one "establishment" of a UGB within the meaning of Goal 14; all subsequent modifications constitute "changes" triggering the application of the Goal 2 standard incorporated in Goal 14. It appears to us to be highly unlikely that LCDC intended, in promulgating Goal 14, that modification of a proposed UGB any time after a line is first drawn on a map must be justified by a "compelling facts and reasons" test. Before the UGB has been deemed to be in compliance with the statewide goals, the stringent Goal 2 standard for UGB "changes" would be inappropriate. Expansion of the UGB, for example, might well be what is required to bring the UGB into compliance with the goals. Modifications of the UGB made prior to acknowledgment, because they precede "establishment" of the UGB, are merely part of the establishment process, as explained by the commissioner quoted above.

■ ■ We conclude that the Goal 2 exception requirements, as incorporated by reference in Goal 14, are not applicable until after the UGB has been acknowledged by LCDC. It follows that LUBA applied an incorrect standard

in *Abrego I and II.* [2] Had the goal issue been the same in both proceedings, LCDC would have been bound by its earlier determination approving LUBA's proposed order and should therefore have deferred acknowledgment pending resolution of the remanded issues. In any event, the remands in both *Abrego* proceedings were based on violations under Goal 2 as incorporated in Goal 14; the decisions did not attempt to resolve whether the UGB meets other Goal 14 requirements,[3] which was properly the issue before LCDC. We turn to that question.

■ In the findings accompanying the compliance acknowledgment order, LCDC noted the future use of the 18.8 acre parcel.[4] That consideration would have been more relevant under the Goal 2 "compelling reasons and facts" tests; it is not dispositive in the Goal 14 calculus for considering factors in establishing the UGB. Petitioners contend that several of the Goal 14 factors *(i.e.,* need, maximum efficiency of land uses and social consequences, as applied to the projected use of the disputed parcel included within the UGB) should lead to disapproval of the UGB. The petition for judicial review, however, identifies

---

[2] Even if Goal 2 were correctly applied in *Abrego I and II* (because the *Abrego* proceedings and the acknowledgment proceeding turned on different standards), there is no lack of coordination as defined in Goal 2, a deficiency alleged here by petitioners. Goal 2's coordination requirements refer to proceedings among cities, counties and special districts, not to the relationship between LUBA and LCDC. Petitioners do not raise the applicability of the general coordination policies expressed in ORS 197.005 (amended Or Laws 1981, ch 748, § 21).

[3] We need not address LCDC's contention that local adoption of a new ordinance mooted the *Abrego* decisions despite the lack of material difference between the former and current ordinances with respect to inclusion of the 18.8 acre parcel.

[4] LCDC's findings accompanying the compliance acknowledgment order stated in part:

"Boundary Segment No. 4 includes two parcels; one containing approximately 5 acres, the other containing approximately 19 acres. Both of these properties were included upon request of the property owners or purchasers. The smaller parcel was included primarily because sewer and water services were available and were developed abutting the subject property. The larger parcel was included specifically for the purpose of providing a site location for an elementary school. The specific site underwent extensive discussion relating to its location and it is found by the City that the site is an appropriate location to provide generalized district needs for serving student populations within eastern Yamhill County locations."

the UGB acknowledgment as the subject of our review, not the future use of this specific parcel.[5]

Moreover, to the extent that the uses of specific parcels are a relevant consideration under Goal 14, petitioners' arguments are not persuasive. The "need" factor mentioned in Goal 14 does not refer to the need for a particular use of the land, but rather to the "demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals." Furthermore, although it appears from *Abrego I* that a school at that site would require only 11 acres, petitioners have not shown that use of the disputed parcel as a school site is so inefficient as to necessitate its exclusion by LCDC from the UGB territory. Finally, although proximity of the school site to an explosives factory's truck route might have "social consequences" when a school is finally committed to that parcel, the parcel's inclusion within the UGB does not necessarily have adverse social consequences. *See, generally, 1000 Friends v. LCDC*, 292 Or 735, 642 P2d 1158 (1982).

As indicated above, the gist of petitioners' appeal is that LCDC's position at acknowledgment was inconsistent with its position earlier taken in *Abrego II*. ORS 183.482(8)(b)(B) mandates remand of an agency order if the agency's action is

"[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; * * *."

We cannot determine from the record whether LCDC had previously adopted an "officially stated agency position." The remarks of one of the LCDC commissioners during the acknowledgment process suggest that LCDC's approval of the remand order in *Abrego II* might have been inconsistent with the position the Commission adopted during acknowledgment. He tried to explain the inconsistency, but not very convincingly:

---

[5] We note that petitioners have not attacked on goal grounds the designation of the parcel in the comprehensive plan as a future school site. That appears to be petitioners' real complaint; the opposition to the UGB is but a means to contest the planned use of the parcel.

"But the staff is recommending this plan because of an establishment of an Urban Growth Boundary and they are concluding that there are, the requirements for an establishment of a boundary have been met. The previous action was a change in a boundary and all we did in the Abrego case was really affirm the yardstick applied by LUBA which is that a standard similar to an acceptance process must be followed to bring a change to the boundary because that's what Ordinance No. 260 did. Now we have in front of us Ordinance No. 2047 which is an establishment of a boundary and the question is no longer, did they follow the exceptions process because this is an establishment of a boundary, the question is did they meet the factors of Goal 14 and the staff has concluded that they did."

We have, however, determined that LCDC's position taken at the acknowledgment phase, *i.e.*, that a UGB is first "established" via acknowledgment, is correct. Therefore we do not remand the valid determination before us on judicial review for inconsistency with the erroneous position taken by LCDC in *Abrego II.* [6]

LCDC, addressing each of the Goal 14 deficiencies identified in the continuance order, concluded:

"The City of Newberg no longer relies on a 30 percent 'market factor' as a justification of the UGB. Land use needs have been revised on the basis of a population projection of 27,000. This projection has been coordinated with Yamhill County and the impact on public facilities has been considered. The existing UGB is adequate to accommodate the land use needs of a population of 27,000. The UGB has been justified in accordance with the locational factors of Goal 14. The City of Newberg has thoroughly addressed the requirements established in the Commission's Continuance Order."

We hold that LCDC did not err in failing to find that the comprehensive plan, including the UGB, violated Goal 14 and in finding that the City's findings adequately addressed the Goal 14 issue.

Affirmed.

---

[6] Furthermore, petitioners here have not argued that the agency's exercise of discretion in acknowledging the comprehensive plan, including the UGB, was outside the range of discretion delegated to LCDC, in violation of a constitutional or statutory provision, or not supported by substantial evidence. ORS 183.482(8); *see also* ORS 197.650.