Argued and submitted January 28, affirmed October 5,
reconsideration denied November 25, 1983,
petition for review allowed January 10, 1984 (296 Or 253)
See 297 Or 142, 681 P2d 124 (1984)

## BRANSCOMB et al,
*Petitioners,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT COMMISSION OF THE STATE OF OREGON et al,
*Respondents.*

(CA A24314)

669 P2d 1192

Douglas M. DuPriest, Eugene, argued the cause for petitioners. With him on the briefs was Hutchinson, Harrell, Cox, Teising & Anderson, P.C., Eugene.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondents LCDC, DLCD, and James F. Ross.

C. W. Henderer, Mayor, Elkton, waived appearance for respondent City of Elkton.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners seek judicial review of the Land Conservation and Development Commission's (LCDC) acknowledgment of the City of Elkton's Comprehensive Plan and Implementing Measures. We affirm.

In 1980, the City presented its comprehensive plan to LCDC requesting acknowledgment pursuant to ORS 197.251.[1] LCDC continued the request for 120 days to allow the City to bring its plan into compliance with Goals 1, 2, 4-7, 10-12, and 14. After additional continuances, the plan and ordinances were acknowledged by an order dated February 23, 1982. Petitioners object to the acknowledgment, claiming that the plan does not comply with several of the Oregon statewide land use planning goals.

■ Petitioners' principal contentions are that LCDC erred in interpreting Goals 2, 3 and 14 in connection with the initial establishment of a UGB. They contend that Goal 3 is applicable to the creation of the City's UGB because agricultural lands are included within it, necessitating a Goal 2 exception as to that agricultural land. They argue further that

---

[1] ORS 197.251 provides, in pertinent part:

"(1) Upon the request of a local government, the commission shall by order grant, deny or continue acknowledgment of compliance with the goals. A commission order granting, denying or continuing acknowledgment shall be entered within 90 days of the date of the request by the local government unless the commission finds that due to extenuating circumstances a period of time greater than 90 days is required.

"* * * * *

"(4) The commission's review of the acknowledgment request shall be confined to the record of proceedings before the local government, any comments, objections and exceptions filed under subsections (2) and (3) of this section and the report of the director. Upon its consideration of an acknowledgment request, the commission may entertain oral argument from the director and from persons who filed written comments, objections or exceptions. However, the commission shall not allow additional evidence or testimony that could have been presented to the local government or to the director but was not.

"(5) A commission order granting, denying or continuing acknowledgment shall include a clear statement of findings which sets forth the basis for the approval, denial or continuance of acknowledgment. The findings shall:

"(a) Identify the goals with which the comprehensive plan and land use regulations comply and those with which they do not comply; and

"(b) Include a clear statement of findings in support of the determinations of compliance and noncompliance."

the City's UGB was "established" in 1975 when the City first adopted its plan, and that Goal 14 requires that the Goal 2 exceptions process be followed, because the City "changed" its UGB in the plan submitted for ackowledgment.

Goal 3 states, in pertinent part:

"* * * A governing body *proposing to convert rural agricultural land to urbanizable land* shall follow the procedures and requirements set forth in the Land Use Planning Goal (Goal 2) for goal exceptions." (Emphasis supplied.)

Goal 3 applies to *changing* rural agricultural land to urbanizable land. Rural lands are defined in the goals as lands

"* * * which are *outside the urban growth boundary* and are: (a) Non-urban agricultural, forest or open space lands, or (b) Other lands suitable for sparse settlement, small farms or acreage homesites with no or hardly any public services, and which are not suitable, necessary or intended for urban use." OAR 660-15-000, Definitions at 24. (Emphasis supplied.)

Because rural lands, as so defined, do not exist within the meaning of the goals until a UGB is established, the conversion requirement of Goal 3 does not apply until after the establishment of a UGB. Here, the UGB was established when LCDC acknowledged the plan. The 1975 plan specifically states that no urban growth boundary was explicitly defined, and that plan was never acknowledged by LCDC. Accordingly, the 1975 proposed UGB was never established.

In *Roth v. LCDC,* 57 Or App 611, 646 P2d 85 (1982), we held that a UGB is not "established" prior to acknowledgment. Modifications of a UGB made prior to acknowledgment, because they precede "establishment" of the UGB, are merely part of the establishment process. *Roth v. LCDC, supra,* 57 Or App at 617. The Goal 2 exception requirements, as incorporated by reference in Goals 3 and 14, are not applicable until *after* the UGB has been acknowledged by LCDC.

Goal 14 states, in pertinent part:

"* * * In the case of a *change* of a boundary, a governing body proposing such change in the boundary separating urbanizable land from rural land, shall follow the procedures and requirements as set forth in the Land Use Planning Goal (Goal 2) for goal exceptions. * * *" (Emphasis supplied.)

Page 742

That language applies only to *changes* in a boundary, which *Roth* interpreted to mean a modification or change after a UGB has been established — that is, after acknowledgment. Petitioners recognize that *Roth* defeats that part of their argument and suggest that we not follow it. We think *Roth* was correctly decided, and we adhere to it.

Petitioners rely on *1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982), which involved the validity of an LCDC amendment to Goal 14. As amended, that goal would have permitted all lands within city limits to be included within a UGB without consideration of factors 3 through 7 of Goal 14. The court concluded that the goal amendment was inconsistent with the law, because:

> "* * * It is inconsistent with the legislative intention to require coordinated land use for LCDC to require that substantial areas of agricultural or other protected land be made available for urban development for the *sole* reason that the land happens to be within city limits and without regard to social, economic and environmental policies." *1000 Friends v. LCDC, supra,* 292 Or at 747. (Emphasis supplied.)

Here, the land was not included within the UGB automatically; rather, it was included only after consideration of social, economic and environmental policies involved in the seven factors of Goal 14.

It is true that the court went on to say, in dictum, that applicable goals, such as Goal 3, should be considered in the establishment of a UGB. Because that question was not involved in the case, we are inclined to think the court misspoke itself, because that interpretation of the applicability of the goals does not appear to be correct. The language of Goal 14 specifically provides that "establishment and change of the boundaries shall be based upon consideration of the following factors." The seven factors are then listed.[2] The amendment to

---

[2] The seven factors set forth in Goal 14 are:

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) Need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

the goal with which the court was concerned in *1000 Friends v. LCDC, supra,* would have eliminated the requirement that retention of agricultural land be considered (factor 6) if the land is within a city's limits. It appears that the court's dictum with respect to Goal 3 was triggered by that elimination in the amendment. As a result of that decision, however, all seven of Goal 14's factors must be considered, but that goal's language does *not* say that establishment of the boundary is to be based on the seven factors in addition to other applicable goals. Rather, it is clear that establishment is to be based only on those factors which, in turn, incorporate the pertinent policies of the other goals. To hold otherwise would create more confusion and redundancy than already exists.

For example, factor 6 requires the consideration of:

> "Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority."

If, in addition, Goal 3 were also directly applicable, as argued by petitioners and suggested by the dictum in *1000 Friends v. LCDC, supra,* the seven prescribed factors, including number 6, make little sense. It would have been unnecessary to say that retention of agricultural land is a high priority, because if Goal 3 were directly applicable to the establishment of a UGB, the preservation of agricultural land would be mandated by that goal alone. According to petitioners, even if the inclusion of the land within the UGB met all of the other factors of Goal 14, it could not be included within the UGB if it were agricultural land unless a Goal 2 exception were taken. The purpose of Goal 14 is to allow a local government to evaluate the seven factors and to exercise its judgment as to which areas should be available for urban growth in the most orderly, economic manner with the least adverse consequences.

We conclude that LCDC properly determined that Goal 3 has no direct application to the establishment of the

---

"(4) Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7) Compatibility of the proposed urban uses with nearby agricultural activities."

City's UGB. A local government, in establishing a UGB, must consider the seven factors of Goal 14, which incorporate the relevant policies of the other applicable goals. The Goal 2 exception process is not applicable until after a UGB has been established by acknowledgment. LCDC did not err in interpreting those goals.

■     The foregoing discussion and conclusions dispose of petitioners' first three assignments of error. Their fourth assignment is that there was no adequate factual basis demonstrating a need to accommodate long-range population growth and a need for housing, employment opportunities and livability as required by factors 1 and 2 of Goal 14. They also contend that the lack of an adequate factual basis violates Goal 2. Their complaint is that the City, in making population projections, failed to use the 1980 census data. The question is not whether it would have been better if the City had used that data, but whether there was substantial evidence to support the City's population projections. There was, as LCDC found.

■     In their fifth assignment, petitioners contend that the City failed to comply with factors 3 through 5 of Goal 14, because it included certain land but excluded an area along Highway 38 on the western boundary and because more housing units were not allocated to specific parcels. Factors 3 through 5 of Goal 14 concern maximum efficiency of land uses, orderly provision for public facilities and services and environmental and other consequences. The City addressed all of the required factors. LCDC determined that the City had made adequate findings, supported by substantial evidence, that explained the establishment of the UGB and supported the inclusion and exclusion of the particular parcels at issue. We agree that the findings are adequately supported, and we cannot say that LCDC erred in concluding that the findings satisfied factors 3 through 5 of Goal 14.

■     Next, petitioners contend that factors 6 and 7 of Goal 14 were not properly addressed. As noted above, factor 6 requires consideration of the retention of agricultural land. The City specifically recognized that land with Class III and Class IV soils was included within the UGB but pointed out that the only one small isolated drainage area contained Class III soil. Goal 14 does not require that factor 6 be accorded

greater weight than the other six factors; it requires only that it be considered along with the others, and if the findings relating to all of the factors justify the proposed UGB, the goal allows the inclusion of agricultural land within the boundary. LCDC determined that the City's findings with respect to the other factors, as well as factor 6, were supported by the record and that they supported the decision to include the area within the UGB.

Factor 7 involves consideration of compatibility of the proposed urban uses with nearby agricultural activities. The City addressed the impact of the UGB on nearby agricultural activities, and the record contains substantial evidence to support its conclusion that the location of the boundaries provides better compatibility (or buffering) with nearby agricultural activities. We find no error in LCDC's application of factors 6 and 7 of Goal 14.

■ Petitioners' final contention is that the plan violates Goal 2, because the plan is both internally inconsistent and inconsistent with the Douglas County Comprehensive Plan. It is internally inconsistent, they say, because the plan does not follow its stated general policy of avoiding urban sprawl and inappropriately located development. They also argue that the UGB violates the plan's general policy of retention of agricultural land. However, the plan includes detailed findings as to why the location of the UGB best provides for orderly economic development and why it was found necessary to include some agricultural land. As already noted, those findings are supported by substantial evidence.

The plan is also internally inconsistent, petitioners claim, because the densities for the Estate and Open Space Zone parcels in the implementing ordinances do not conform to the general density standards for those types of areas. However, as with the other claimed internal inconsistencies, the City has provided a rational explanation for the planned densities of those parcels. LCDC found the explanation sufficient, and we cannot say that it erred in doing so.

Another claimed inconsistency is that the City's plan excludes from its UGB an area west of the City that Douglas County's Comprehensive Plan designated as committed to non-resource uses. LCDC concluded that Goal 2's requirement of consistency between City and County comprehensive plans

did not require the City to include within its UGB land that is committed to non-resource use in the County Comprehensive Plan. We agree that there is no inconsistency. The City explained in detail why that land was not included: those areas were subject to natural hazards, such as flooding, and have characteristics such as steep slopes that make them less desirable for urban development than the land that was included. The findings are supported by the record, and we find no error in LCDC's interpretation of the consistency requirements of Goal 2 or in its conclusion that the City did not violate those requirements.

Affirmed.