Argued and submitted March 7, affirmed May 22, 1984

BRANSCOMB et al,
*Petitioners on Review,*

*v.*

LAND CONSERVATION AND DEVELOPMENT
COMMISSION et al,
*Respondents on Review.*

(CA A24314, SC S30147)

681 P2d 124

Robert E. Stacey, Jr., Portland, argued the cause for petitioners on review. Douglas M. DuPriest, Eugene, filed the brief for petitioners on review. With him on the brief was Hutchinson, Harrell, Cox, Teising & Anderson, P.C., Eugene.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondents on review Land Conservation and Development Commission, Department of Land Conservation and Development, and James F. Ross. David

Frohnmayer, Attorney General, filed the briefs for respondents on review. With him on the brief was William F. Gary, Solicitor General, and Mary J. Deits, Assistant Attorney General.

Timothy V. Ramis, Portland, filed a brief amicus curiae for David Knapp, Richard Dennis Smith, Kent Bullock, Samadhi Matthews, Chidvalis Rajneesh Meditation Center, Rajneesh Investment Corporation, and Rajneesh Neosannyas International Commune.

CAMPBELL, J.

## CAMPBELL, J.

We restricted review in this case to a single issue: "Whether the Court of Appeals erred in concluding that Goal 3 (Agricultural lands) is inapplicable to a local government decision to include agricultural lands within an urban growth boundary when that boundary is first established." We hold that the Court of Appeals did not err, and affirm.

The City of Elkton, a town that includes 85 acres within its city limits, prepared a comprehensive plan with an urban growth boundary that would encompass another 120 acres. This additional 120 acres contains Class III and IV agricultural soils, which are defined as agricultural lands by Goal 3. Petitioners have argued throughout that because the establishment of this urban growth boundary affects agricultural lands, the city must comply with Goal 3, which sets guidelines for the preservation of agricultural lands. Compliance with Goal 3 would require the city to follow the procedures and requirements of Goal 2 for goal exceptions.

The city agrees that if it were changing an urban growth boundary to include agricultural lands, it would need to consider Goal 3, but contends that Goal 14 (urbanization) alone sets standards for the establishment of an urban growth boundary.

The city presented its comprehensive plan to the Land Conservation and Development Commission for acknowledgement pursuant to ORS 197.251. LCDC acknowledged Elkton's comprehensive plan, including the urban growth boundary, even though there were no findings concerning Goal 3 compliance.

Petitioners sought to have the Court of Appeals set aside the acknowledgment order of LCDC, assigning seven errors. The Court of Appeals affirmed the order. *Branscomb v. LCDC,* 64 Or App 738, 669 P2d 1192 (1983). As noted above, we restricted our review to the single issue of the applicability of Goal 3 to the establishment of an urban growth boundary.[1]

---

[1] Because of our restriction of the question on review, we need not decide whether *Roth v. LCDC,* 57 Or App 611, 646 P2d 85 (1982), is correct. In that case, the court held that an urban growth boundary is established only when LCDC acknowledges the boundary. We note petitioners are correct in arguing that Goal 14 was drafted in 1974, and the acknowledgment process was enacted in 1977 (Oregon Laws 1977, Chapter

■      The legislature directed the Department of Land Conservation and Development to develop and the Commission to adopt the statewide goals that we are considering.[2] We are construing LCDC's interpretation of its own rule. Therefore we give some deference to its interpretation. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 221, 621 P2d 547 (1980).

■      Petitioners contend that Goal 3 unambiguously requires that the conversion of "rural agricultural land" to "urbanizable" land be based on the five factors of Goal 3 and be supported by a Goal 2 exception.[3] The pertinent part of Goal 3 reads as follows:

"GOAL: To preserve and maintain agricultural lands.

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. * * * Conversion of rural agricultural land to urbanizable land shall be based upon consideration of the following factors: (1) environmental, energy, social and economic consequences; (2) demonstrated

---

664). Also Goal 14 itself refers to "urban growth boundaries established prior to January 1, 1975." If acknowledgment were the sole method of establishing urban growth boundaries, this reference would be superfluous because there could have been no urban growth boundary established before 1977.

[2] ORS 197.225 provides:

"The department shall prepare and the commission shall adopt goals and guidelines for use by state agencies, local governments and special districts in preparing, adopting, amending and implementing existing and future comprehensive plans."

[3] Goal 2:

"PART II. EXCEPTIONS: When, during the application of the statewide goals to plans, it appears that it is not possible to apply the appropriate goal to specific properties or situations, then each proposed exception to a goal shall be set forth during the plan preparation phases and also specifically noted in the notices of public hearing. The notices of hearing shall summarize the issues in an understandable and meaningful manner.

"If the exception to the goal is adopted, then the compelling reasons and facts for that conclusion shall be completely set forth in the plan and shall include:

"(a) Why these other uses should be provided for,
"(b) What alternative locations within the area could be used for the proposed uses;
"(c) What are the long term environmental, economic, social and engery consequences to the locality, the region or the state from not applying the goal or permitting the alternative use;
"(d) A finding that the proposed uses will be compatible with other adjacent uses."

need consistent with LCDC goals; (3) unavailability of an alternative suitable location for the requested use; (4) compatibility of the proposed use with related agricultural land; and (5) the retention of Class I, II, III, and IV soils in farm use. A governing body proposing to convert rural agricultural land to urbanizable land shall follow the procedures and requirements set forth in the Land Use Planning goal (Goal 2) for goal exceptions."

Respondents, on the other hand, argue that only Goal 14, which deals with urbanization, needs to be consulted in this situation. Goal 14 in part reads:

"Goal: To provide for an orderly and efficient transition from rural to urban land use.

"Urban growth boundaries shall be established to identify and separate urbanizable land from rural land.

"Establishment and change of the boundaries shall be based upon consideration of the following factors:

"(1)   Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2)   Need for housing, employment opportunities, and livability;

"(3)   Orderly and economic provision for public facilities and services;

"(4)   Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5)   Environmental, energy, economic and social consequences;

"(6)   Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7)   Compatibility of the proposed urban uses with nearby agricultural activities.

"The results of the above considerations shall be included in the comprehensive plan. In the case of a change of a boundary, a governing body proposing such change in the boundary separating urbanizable land from rural land, shall follow the procedures and requirements as set forth in the Land Use Planning Goal (Goal 2) for goal exceptions."

We agree with respondents that a governing body need only comply with Goal 14 in establishing an urban

growth boundary. We find this to be the more reasonable construction of the goals. Goal 3 is a general goal, which concerns the preservation of agricultural lands in most situations. Goal 14, however, is more specific, and sets criteria for the establishment of an urban growth boundary. We also note that Goal 14 requires the governing body to consider the seven listed factors for both "establishment or change" of an urban growth boundary but later the goal states that "in case of a *change* of a boundary" the governing body must follow the procedures and requirements of Goal 2. (Emphasis added.) The only reasonable interpretation of this last sentence is that Goal 2 exceptions are required only for a change of a boundary, and not for the establishment thereof. If a governing body needed to follow Goal 3 for the establishment of an urban growth boundary, this would be redundant, for Goal 3 itself requires compliance with Goal 2 (exceptions). We also note that the seven factors from Goal 14 would be redundant in view of the five more comprehensive factors of Goal 3.[4]

Respondents rely in part on *1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982). In that case, we were examining an amendment to Goal 14 which would have eliminated the requirement that the governing body consider factor 6, the retention of agricultural land, before establishing an urban growth boundary if the land were within city limits. We correctly held that amendment to be invalid. However, we also said that Goal 3 would be applicable in the consideration of the establishment of an urban growth boundary. That statement was dictum, and incorrect dictum.

Affirmed.

---

[4] If a governing body were required to consider factors from Goal 3 as well as factors from Goal 14 in the establishment of an urban growth boundary, the only new factor it would consider would be factor 3 from Goal 3: "unavailability of an alternative suitable location for the requested use."