Argued and submitted April 11, affirmed June 27, reconsideration denied October 12, petition for review allowed November 13, 1984 (298 Or 238)

PERKINS et al,
*Respondents - Cross-Petitioners,*

*v.*

CITY OF RAJNEESHPURAM,
*Petitioner - Cross-Respondent,*

*and*

WASCO COUNTY, OREGON,
*Respondent - Cross-Petitioner.*

(83-094 & 83-095; CA A31157)

686 P2d 369

Ma Prem Sangeet, City Attorney, Rajneeshpuram, argued the cause and filed the briefs for petitioner - cross-respondent City of Rajneeshpuram.

Mark J. Greenfield, Portland, argued the cause and filed the briefs for respondents - cross-petitioners.

Wilford K. Carey, Hood River, argued the cause for respondent - cross-petitioner Wasco County. With him on the briefs was Annala, Carey, Hull & Van Koten, Hood River.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Jeff Bennett, Assistant Attorney General, and Michael B. Huston, Assistant Attorney General, Salem, filed a brief for Land Conservation and Development Commission.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner City of Rajneeshpuram appeals and respondents cross-appeal from a Land Use Board of Appeals (LUBA) order that reversed the city's annexation of 119 acres of agricultural land and its contemporaneous rezoning of the land to permit urban uses on it. We affirm.

In September, 1982, the city adopted a comprehensive plan and submitted it to the Land Conservation and Development Commission for acknowledgment review. ORS 197.251. The following June, LCDC issued a continuance order determining that the city's proposed urban growth boundary (UGB) did not comply with Goal 14. On August 24, 1983, the city amended its UGB. On August 28, the city adopted the annexation and zoning ordinances which respondents challenge in this proceeding. The annexed land is within the city's amended UGB. At the time of the city's action, the annexed land was designated for exclusive farm use in the Wasco County comprehensive plan. The city's comprehensive plan and UGB were not acknowledged when it enacted the ordinances and, so far as the record shows, have not been acknowledged.

■■    The city's first assignment is that LUBA erred by finding that the individual respondents and Wasco County had standing to appeal and to intervene, respectively. We find no basis for reversing that determination as a matter of law. ORS 197.850(8); *see Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982). LUBA also noted that the city did "not specifically challenge the standing of 1000 Friends of Oregon" and, therefore, LUBA concluded:

"* * * 1000 Friends has standing to bring this appeal. [LUBA] wishes to note, however, that in so doing it is making no comment as to the adequacy of the allegations made by 1000 Friends in support of its claim of standing."

The city argues that its brief before LUBA adequately raised the question of 1000 Friends' standing. We disagree. We also note that, given the identical or overlapping contentions that the various respondents made in the LUBA proceeding, the city's failure to challenge the standing of 1000 Friends may make it academic whether any of the other respondents had standing. *See Thunderbird Motel v. City of Portland,* 40 Or App 697, 702, n 2, 703-04, 596 P2d 994, *rev den* 287 Or 409

(1979); *compare Benton County v. Friends of Benton County, supra,* 294 Or at 81-82.

LUBA based its reversal of the city's action on the ground, *inter alia,* that the action violated Goals 2, 3 and 14.

Respondents argued to LUBA that any pre-acknowledgment decision to annex agricultural land or to rezone it for urban use violates Goals 2, 3 and 14, unless a Goal 2 exception or an exception pursuant to ORS 197.732 is taken. Respondents also contended that the annexation violated LCDC's preacknowledgment annexation rule. OAR 660-01-315. LUBA concluded that the goals rather than the annexation rule were relevant to its decision because:

"* * * This annexation was done in conjunction with rezoning and immediate conversion of rural land for urban use. Our review must look to what happened, and not simply to bits of what happened or what might have happened. Our review must always be responsive to the facts of a particular case. Were [LUBA] to answer each abstract question presented, [LUBA] believes it would compound the opportunity to make error and to confuse and mislead parties in future cases. Therefore, [LUBA] will conduct its review by looking at the facts of this case and how the law applies to those facts. We believe we must consider the annexation *and* the rezoning together under the applicable goals." (Emphasis in original.)

LUBA then held:

"While [LUBA] believes the question of whether annexation outside of an urban growth boundary must always be accompanied by an exception is an interesting question, that issue is not presented under the facts of the case. In this case, the annexation was undertaken not only for the purpose of redrawing a jurisdictional boundary, but also for the purpose of permitting immediate conversion to urban uses. Under these circumstances, the Board finds the city was obliged to apply the goals and take an exception to allow this conversion to urban use. The exception is necessary to explain why rural land (in this case agricultural land) had to be taken for urban uses prior to its inclusion within an acknowledged urban growth boundary." (Footnotes and citations omitted.)

The city assigns error to that holding, and argues:

"LUBA's conclusion that Goal 14 has been violated possibly arises from a mistaken belief that Goal 14 prohibits 'urban uses' on 'rural land' or on land which is not yet within an

acknowledged urban growth boundary. Petitioner does not believe that there is such an unwritten provision in Goal 14."

Be that as it may, Goal 14 does impose an absolute requirement that a particular process—the establishment of a UGB—be completed before agricultural land can be converted to urban use. A UGB is not "established" until it has been acknowledged. *Roth v. LCDC,* 57 Or App 611, 646 P2d 85 (1982).[1] The city has not completed the establishment process

---

[1] In *Branscomb v. LCDC,* 297 Or 142, 681 P2d 124 (1984), the Supreme Court stated in a footnote:

"Because of our restriction of the question on review, we need not decide whether *Roth v. LCDC,* 57 Or App 611, 646 P2d 85 (1982), is correct. In that case, the court held that an urban growth boundary is established only when LCDC acknowledges the boundary. We note petitioners are correct in arguing that Goal 14 was drafted in 1974, and the acknowledgment process was enacted in 1977 (Oregon Laws 1977, Chapter 664). Also Goal 14 itself refers to 'urban growth boundaries established prior to January 1, 1975.' If acknowledgment were the sole method of establishing urban growth boundaries, this reference would be superfluous because there could have been no urban growth boundary established before 1977." 297 Or at 144, n 1.

We find no inconsistency between our conclusion in *Roth* and the matters discussed in the quoted footnote. The threshold question in *Roth* was what constituted the "establishment" of a UGB as distinguished from a "change" to a UGB within the meaning of Goal 14. The goal makes its seven conversion factors the sole criteria for establishment of a UGB, but imposes the additional requirement that a Goal 2 exception be taken in order to change a UGB. Given that difference in the substance and procedure for establishing a UGB, on the one hand, and for changing a UGB, on the other, we reasoned in *Roth* that:

"* * * It appears to us to be highly unlikely that LCDC intended, in promulgating Goal 14, that modification of a proposed UGB any time after a line is first drawn on a map must be justified by [Goal 2's] 'compelling facts and reasons' test. Before the UGB has been deemed to be in compliance with the statewide goals, the stringent Goal 2 standard for UGB 'changes' would be inappropriate. Expansion of the UGB, for example, might well be what is required to bring the UGB into compliance with the goals. Modifications of the UGB made prior to acknowedgment, because they precede 'establishment' of the UGB, are merely part of the establishment process * * *." 57 Or App at 617.

The essential point we made in *Roth* is that "establishment," as used in Goal 14, refers to the point in the process at which the UGB complies with the goals. Goal compliance is achieved under the current statutory and regulatory scheme when LCDC acknowledges a plan and UGB as being in compliance. The fact that the acknowledgment statutes were enacted after Goal 14 was drafted does not affect our reasoning in *Roth;* the statutes simply created a clear line of demarcation for determining when the condition precedent to UGB "establishment" under the goal as promulgated is satisfied.

The reference in Goal 14 to "urban growth boundaries established prior to January 1, 1975," also has no affect on our reasoning or conclusion in *Roth.* That language appears in the context of the goal's requirement that certain UGBs established before the effective date of the goals must be "reviewed" by local governing

that the goal makes a prerequisite to its urbanization of the 119 acres.

■     The city argues next that LUBA was incorrect in concluding that an exception had to be taken to that Goal 14 requirement to allow the annexation and rezoning and that the city could instead

> "* * * rely on its findings in support of the UGB adoption and * * * apply the Goal 14 conversion factors when conversion to urban uses is proposed. This is what [the city] did in this case.
>
> "* * * * *
>
> "* * * In adopting a UGB, a local government must address and adopt findings and a statement of reasons demonstrating that it has met the seven UGB establishment factors of Goal 14. * * *
>
> "* * * * *
>
> "* * * [C]ities and counties are not required to halt all development activities within adopted exception or UGB areas prior to acknowledgment of their plans. Just as cities and counties are entitled to rely on exceptions for other land use decisions made prior to acknowledgment unless they are invalidated by an authority competent to do so, so are they entitled to rely on preacknowledgment decisions concerning the location of their UGB's, which is what [the city] did in approving the challenged annexation and rezoning.
>
> "To hold otherwise would mean that every city in the state, prior to acknowledgment of its UGB, rather than relying on an *adopted* UGB would have to take an exception to Goal 3 and, possibly, to Goal 14 as well, every time it allowed nonagricultural or urban-type development on agricultural land, or possibly any land at all, within that adopted UGB. * * *" (Emphasis the city's.)

Reduced to essentials, the city's argument is that, *because* its UGB is unacknowledged, it may base its conversion of agricultural land to urban uses on its unacknowledged UGB rather than comply with or take an exception to the Goal 14 requirement that such conversions not occur before there is an

---

bodies in accordance with the seven factors of Goal 14. In the light of that context, Goal 14 certainly cannot be understood as treating a pre-1975 "establishment" as synonymous with the "establishment" of a UGB after the goals took effect.

acknowledged UGB. The argument is circular at best, and we reject it.

The city next argues, citing *Branscomb v. LCDC,* 64 Or App 738, 669 P2d 1192 (1983), *aff'd* 297 Or 142, 681 P2d 124 (1984), as its authority, that "the * * * 'urbanizable' conversion provisions of Goal 3 * * * apply to changes made only after acknowledgment of a city's UGB." We held in *Branscomb* that the exception requirement that Goal 3 establishes for conversions of "agricultural land to urbanizable land" is inapplicable in the UGB establishment process, because

> "Goal 3 has no direct application to the establishment of the City's UGB. A local government, in establishing a UGB, must consider the seven factors of Goal 14, which incorporate the relevant policies of the other applicable goals. 64 Or App at 743-44.[2]

*See Roth v. LCDC, supra.*

The city's argument leaves unclear which of two points it is drawing from or ascribing to *Branscomb*. The first possibility is that a preacknowledgment conversion of agricultural land is not inconsistent with the land use and resource preservation objectives of Goal 3. If that is the city's point, it misunderstands *Branscomb*. We said nothing there about the substantive *land use* requirements of the goals; our opinion pertained only to the procedures that must be followed and the factors that must be considered in the UGB establishment process. The second possible point of the city's argument is that, under *Branscomb*, it was not required to take the exception contemplated by Goal 3 in connection with its amendment of its UGB. That point is correct, but it is irrelevant. LUBA did not hold that the city was required to take an exception *in connection with* the establishment of its UGB; the exception that LUBA concluded the city was obliged to and did not take was to the Goal 14 requirement that it not urbanize agricultural land until it *has* established a UGB.

---

[2] The city bases its argument on this court's decision in *Branscomb,* which was affirmed by the Supreme Court after this case was under submission. As relevant to the city's argument, we understand the Supreme Court's reasoning in *Branscomb* to parallel the reasoning of our opinion in that case.

Our conclusion that LUBA correctly decided that the annexation and rezoning action violated the goals makes it unnecessary for us to consider the city's challenge to the alternative bases for LUBA's ruling. *See* n 4, *infra.*

Respondents cross-appeal and assign error to the portions of LUBA's order that reject or do not adopt various contentions respondents made in the LUBA proceeding. Respondents argue that LUBA violated ORS 197.835(9) by "failing to fully address and decide" whether the city's action violated LCDC's preacknowledgment annexation rule as well as the goals. ORS 197.835(9) provides:

> "Whenever the findings, order and record are sufficient to allow review, and to the extent possible consistent with the time requirements of ORS 197.830(12), [LUBA] shall decide all issues presented to it when reversing or remanding a land use decision * * *."

LUBA's explanation for its disposition of the issue, quoted earlier in this opinion, was essentially that the annexation rule had no meaningful relationship to the facts or bearing on the decision of the case and that the goal issues were decisive. We hold that LUBA did not violate ORS 197.835(9). A statement by LUBA that an issue is not relevant under the facts or is subsumed within or rendered immaterial by other issues is a decision of the issue within the meaning of the statute. We do not agree with respondents that the decision required by ORS 197.835(9) must take the form of a yes or no answer to each of the parties' contentions or that LUBA must select one of the alternative answers advocated by the parties. The correct answer may not be among those alternatives.

In their various briefs on cross-appeal, respondents make nine other assignments of error.[3] Because we agree with LUBA's conclusion that the city's action violates the goals, it is not necessary for us to reach respondents' remaining assignments to decide this appeal. Unlike LUBA, we are not required by statute to address all issues raised by the parties. It is our practice and that of most other appellate courts *not* to resolve issues that are superfluous to the decision of an appeal

---

[3] LCDC has appeared pursuant to ORAP 5.18 to argue in support of one of those assignments.

and that cannot have any bearing on later proceedings in the case.[4] That practice is a salutary one, predicated on the principle that law should not be made unnecessarily. The fact that LUBA, whose decisions we review, is obligated to decide all issues presented to it is not a sufficient reason for us to depart from our usual practice. We therefore decline to reach respondents' remaining assignments. By doing so, we do not imply acceptance or rejection of the merits of those assignments.

Affirmed.

---

[4] We note that the order we are affirming reverses the city's action outright.