Argued and submitted February 6, 1990, the decision of the Court of Appeals and order of the Workers' Compensation Board affirmed December 19, 1991

In the Matter of the Compensation of
Lois Booth, Claimant.

Lois BOOTH,
*Petitioner on Review,*

*v.*

TEKTRONIX, INC.,
*Respondent on Review.*

(WCB 84-07174; CA A50290; SC S36388)

823 P2d 402

J. Randolph Pickett, P.C., Portland, filed the petition and argued the cause for petitioner on review.

Barbara A. Brainard, of Stoel Rives Boley Jones & Grey, Portland, argued the cause for respondent on review.

Kathryn H. Clarke, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Karen O'Kasey and Janet M. Schroer, of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amici curiae* Attorneys for Oregon Association of Workers' Compensation Defense Counsel, Associated Oregon Industries, and Oregon Association of Defense Counsel.

Before Peterson, Chief Justice,** and Carson,*** Jones,**** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

CARSON, C. J.

---

** Peterson, Chief Justice when case argued.

*** Carson, Chief Justice when decision rendered.

**** Jones, J., resigned April 30, 1990.

## CARSON, C. J.

The issues we address in this workers' compensation case arose as the result of claimant's objection to the introduction of evidence obtained by her employer from pre-hearing communications with claimant's treating physicians without prior notice to claimant.[1] The first issue is whether the physician-patient privilege applies to proceedings before the Workers' Compensation Board (the Board) and, if it does apply, whether claimant waived the privilege. The second issue is whether the Board's interpretation of its rules, which allows these pre-hearing communications, was an erroneous interpretation of law. The Court of Appeals affirmed the Board's order without opinion. *Booth v. Tektronix*, 97 Or App 431, 776 P2d 884 (1989). We affirm the decision of the Court of Appeals.

### FACTS

Lois Booth (claimant) started working for Tektronix (employer) as an "assembler" on February 14, 1966. She later obtained positions with employer as a quality control inspector and then as a "calibrator." On October 24, 1983, claimant injured her mid-back and right rib cage while working. In November, claimant's treating physician diagnosed this injury as a pulled muscle or ligament. Claimant filed a claim for a disabling injury which first was accepted and then later denied by employer on the ground that claimant's pain was unrelated to the injury that had occurred at work.

Following the denial in June 1984, another physician examined claimant. At this time, in addition to the rib cage pain, claimant was experiencing pain that radiated down her back. This latter pain eventually was diagnosed as being due to a herniated disc of the spine at the thoracic (chest) level. Upon this physician's request, employer reopened claimant's claim and later rescinded its denial of the claim. In November 1985, she was awarded 25 percent unscheduled permanent partial disability due to the mid-back injury.

---

[1] This form of communication frequently is labeled "*ex parte* contact," using the term "*ex parte*" to mean "[o]n one side only." Black's Law Dictionary 576 (6th ed 1990).

Following surgery to correct the herniated disc and alcohol injections to treat her continuing pain after surgery, claimant continued to suffer low-back pain which radiated down her legs. Employer had denied responsibility for claimant's *low-back* problems in May 1985.

After an April 1987 hearing, the referee affirmed the partial denial (low-back) and the award of 25 percent unscheduled permanent partial disability (mid-back). At the hearing, the referee — over claimant's objections — admitted seven exhibits consisting of letters describing claimant's condition from three of claimant's treating physicians. The seven letters resulted from five pre-hearing communications by employer's lawyer with these physicians. Employer's pre-hearing communications with the physicians occurred in person, by telephone, and by letters. Employer had not given claimant notice prior to communicating with the physicians.

Claimant requested Board review of the referee's decision. In its decision, the Board relied upon its prior decisions in *Adelbert P. Sheppard*, 39 Van Natta 747 (1987), and *Allen W. Hayes, Jr.*, 37 Van Natta 1179 (1985), wherein the Board held that pre-hearing communications between an employer's lawyer and a claimant's treating physician without prior notice to claimant were permitted by Board rules. Based on those decisions, the Board agreed with the referee that the letters were admissible and that claimant correctly was denied compensation for her low-back problem because it was unrelated to the on-the-job injury. However, the Board found that the referee incorrectly had determined the extent of claimant's permanent disability for her compensable mid-back injury and increased her award from 25 percent to 50 percent unscheduled permanent disability.

Claimant sought judicial review, assigning as error the admission of the evidence that resulted from the communications. In additional assignments of error, claimant argued that, without the challenged exhibits, there was no substantial evidence to support the Board's findings that the low-back problem was not due to her on-the-job injury and that the Board erred in concluding that claimant was only partially, not totally, disabled. The Court of Appeals affirmed

the Board's decision without opinion,[2] and claimant sought review in this court.

## DISCUSSION

■ The essence of claimant's argument to this court is that the Board's interpretation of the statutes and rules, which permits the communications at issue, is an erroneous interpretation of the agency's own rules, the workers' compensation statutes, and other provisions of law, thus bringing this case within our scope of review under ORS 656.298(6) and 183.482(8)(a).[3] We first examine the status of the physician-patient privilege in workers' compensation hearings and then review the appropriateness of pre-hearing communications between the employer's lawyer and the claimant's treating physician.

### A. Physician-Patient Privilege

Claimant argues that the exhibits were inadmissible because the evidence obtained from the pre-hearing communications is protected by the physician-patient privilege, Oregon Evidence Code (OEC) 504-1,[4] and neither statutes nor

---

[2] The Court of Appeals previously had held, in an opinion on reconsideration, *Mershon v. Oregonian Publishing*, 96 Or App 223, 772 P2d 440, *rev den* 308 Or 315 (1989), that the Board's interpretation of its rules to permit pre-hearing communications between the employer's lawyer and the claimant's physician without prior notice to the claimant was not inconsistent with any statute or rule and thus was entitled to deference.

[3] ORS 656.298(6) provides:

"The review by the Court of Appeals shall be on the entire record forwarded by the board. Review shall be as provided in ORS 183.482(7) and (8)."

ORS 183.482(7) provides, in part:

"[T]he court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."

ORS 183.482(8)(a) provides:

"The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall: [set aside or modify the order or remand the case.]"

[4] OEC 504-1(2) states:

"A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications in a civil action, suit or proceeding, made for the purposes of diagnosis or treatment of the patient's physical condition, among the patient, the patient's physician or persons who are participating in the diagnosis or treatment under the direction of the physician, including members of the patient's family."

the Board's own rules provide for waiver of this privilege. Employer responds that the physician-patient privilege is inapplicable in workers' compensation proceedings.

The first step in our analysis is the Workers' Compensation Law, ORS chapter 656. ORS 656.704 provides, in part:

"(1) Actions and orders of the director, and administrative and judicial review thereof, *regarding matters concerning a claim* under this chapter [Workers' Compensation Law] are subject to the procedural provisions of this chapter and such procedural rules as the *board* may prescribe.

"(2) Actions and orders of the director and the conduct of hearings and other proceedings pursuant to this chapter [Workers' Compensation Law], and judicial review thereof, *regarding all matters other than those concerning a claim* under this chapter, are subject only to ORS 183.310 to 183.550 [Administrative Procedures Act] and such procedural rules as the *director* may prescribe. * * *

"(3) For the purpose of determining the respective authority of the director and the board to conduct hearings, investigations and other proceedings under this chapter, and for determining the procedure for the conduct and review thereof, matters concerning a claim under this chapter are those matters in which a worker's right to receive compensation, or the amount thereof, are directly in issue." (Emphasis added.)

The statute references different sources for procedural rules depending upon whether the matter is one, such as the present case, that concerns a claim, or is a matter that does not concern a claim. If the matter concerns a claim, the procedures contained in the Workers' Compensation Law and rules of the Board apply; in contrast, if the matter does not concern a claim, the Administrative Procedures Act (in part) and rules of the director of the Department of Insurance and Finance apply. Because this case involves a claim, the physician-patient privilege could be made applicable by the workers' compensation procedural statutes or by a rule that the Board has prescribed. The parties have cited no such statute or rule to this court, and we have not found such a statute or rule.

Further, ORS 656.283(7), the Workers' Compensation Law provision concerning hearing procedures, provides, in part:

"Except as otherwise provided in this section and rules of procedure established by the board, the referee is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice."

Accordingly, because the Workers' Compensation Law does not provide that the physician-patient privilege of OEC 504-1 is applicable, the referee was not required by the Workers' Compensation Law to apply OEC 504-1 and to exclude the evidence resulting from the pre-hearing communications.

Claimant argues, nevertheless, that the Oregon Evidence Code and the Oregon Administrative Procedures Act themselves make the privilege applicable. Claimant relies on the Commentary to OEC 101, which describes the applicability of the Oregon Evidence Code. The legislative commentary states:

"Currently, the rules of evidence *except those of privilege* do not apply to administrative agencies in contested cases. ORS 183.450. Nothing in [OEC] 101 should be construed to alter present Oregon practice under the administrative procedures statutes." Kirkpatrick, Oregon Evidence Code 3 (1989). (Emphasis added.)

In response to claimant's argument, we begin at the place that the commentary to the Oregon Evidence Code suggests that we should begin — an examination of ORS 183.450.

ORS 183.450(1) provides:

"In contested cases:

"(1) Irrelevant, immaterial or unduly repetitious evidence shall be excluded but erroneous rulings on evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party. All other evidence of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs shall be admissible. *Agencies shall give effect to the rules of privilege recognized by law.* Objections to evidentiary offers may be made and shall be noted in the record. Any part of the

evidence may be received in written form." (Emphasis added.)

This broad mandate incorporates the rules of privilege, including those contained in the Oregon Evidence Code, into contested cases. However, another statute, ORS 183.315, lists certain agencies to which the privilege-protecting statute does not apply. The relevant part of ORS 183.315 is subsection (1), which provides:

> "Except as otherwise provided in subsection (6) of this section [referring to the Public Utility Commission], the provisions of ORS * * * 183.450 * * * do not apply to * * * [the] Department of Insurance and Finance with respect to its functions under ORS chapters 654 and 656 [chapters concerning workers' compensation] * * *."[5]

Consequently, the statute that retains the evidentiary rules of privilege in contested cases (ORS 183.450) specifically does not apply in workers' compensation claim hearings (ORS 183.315(1)).[6] Thus, claimant's argument based on the Oregon Evidence Code and the Oregon Administrative Procedures Act leads us to the same outcome as our analysis of the Workers' Compensation Law.

We conclude that the physician-patient privilege does not apply in a workers' compensation contested case claim hearing. Therefore, the rules of privilege do not make the Board's interpretation, which permits pre-hearing communications between an employer's lawyer and a claimant's physician without prior notice to claimant, incorrect as a matter of law. Consequently, we do not reach the corollary issue of waiver of the privilege.

---

[5] As a result of a legislatively-directed agency reorganization in 1987, the language in this subsection, which previously listed the "Workers' Compensation Department," was changed to substitute the "Department of Insurance and Finance with respect to its functions under ORS chapters 654 and 656." Or Laws 1987, ch 373, § 21. The Workers' Compensation Board was a part of the predecessor Workers' Compensation Department, ORS 656.708 (1985), and now is within the Department of Insurance and Finance, ORS 656.712(1). The proceedings herein spanned the pre- and post-reorganization periods, a factor of no significance in this case.

[6] A statutory exemption of workers' compensation proceedings from the application of the physician-patient privilege is common among the states. See 8 Wigmore, Evidence § 2380 (McNaughton rev ed 1961 & Supp 1991).

## B. Pre-hearing Communications Appropriateness

The fact that the statutes and rules do not provide for the physician-patient privilege in workers' compensation contested cases does not resolve entirely the second question of the appropriateness of pre-hearing communications between claimant's treating physicians and employer's lawyer. Claimant argues also (1) that even if the privilege is inapplicable, other areas of the law recognize and protect the special relationship between a patient and her physician, and (2) that the workers' compensation statutes and agency rules do not contemplate this type of communication.

### 1. Policy

Claimant and *amicus* Oregon Trial Lawyers Association (OTLA) cite many sources recognizing the special relationship between patient and physician outside the context of the evidentiary privilege. These include: (1) The Hippocratic Oath; (2) willful or negligent disclosure of a professional secret as grounds for suspension of, or refusal to grant, a license to practice medicine, ORS 677.190(5); (3) the existence of tort liability for a physician's breach of the confidential relationship under *Humphers v. First Interstate Bank*, 298 Or 706, 696 P2d 527 (1985); (4) the constitutional right to privacy, *see Roe v. Wade*, 410 US 113, 219, 93 S Ct 705, 35 L Ed 2d 147 (1973) (Douglas, J., concurring) ("[t]he right to privacy has no more conspicuous place than in the physician-patient relationship, unless it be in the priest-penitent relationship"); and (5) ethical obligations of lawyers when approaching a plaintiff's physicians in personal injury cases.[7]

■    The respect accorded the physician-patient relationship in other contexts does not govern the status of the

---

[7] Claimants and *amicus* OTLA cite subsequently withdrawn legal ethics opinions of the Oregon State Bar for the existence of an ethical obligation, *e.g.*, Oregon State Bar, Legal Ethics Opinion No. 248 (Sept 1981). There are no *current* legal ethics opinions limiting communication between lawyers and physicians. *See* Oregon Formal Ethics Opinions, v-vi (1991) (all former ethics opinions withdrawn).

We note that the Rules of Conduct adopted by the Oregon State Bar and the Oregon Medical Association limit such communication generally but provide an explicit exception for communication in conformity with Oregon workers' compensation rules. *See* Rule 3a, Statement of Principles Governing Certain Lawyer-Physician Relationships (1984).

relationship in workers' compensation cases. This is especially true, as discussed earlier, when there is no evidentiary privilege connected with that relationship in Workers' Compensation Law. Thus, these reasons supporting prohibition of such communications are, regardless of their wisdom, no more than policy arguments. Weighing of policy arguments in the administrative law context is within the purview of the legislature, not the courts. The legislature delegated authority to the agency to define policy in this area by promulgating rules regarding physician reporting. ORS 656.252. This court's review of such delegative rules is largely deferential, especially when the agency has special expertise and has made a statutory interpretation at least as plausible as any challenger's. As this court has stated:

> "All legislative decisions involve value judgments of a political nature and so do delegated legislative decisions.
>
> "* * * The delegation of responsibility for policy refinement under such a [policy-delegating] statute is to the agency, not to the court. The discretionary function of the agency is to make the choice and the review function of the court is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980).

*See Branscomb v. LCDC*, 297 Or 142, 681 P2d 124 (1984) (court will give deference to agency's interpretation of its rule adopted pursuant to a policy-delegating statute).

■ The Board is permitted, as it did in *Alan W. Hayes, Jr.*, *supra*, to adopt a general policy interpreting one of its rules that will be applicable to future cases. ORS 183.355(2); *Marbet v. Portland Gen. Elect.*, 277 Or 447, 461, 561 P2d 154 (1977). The Board, in its interpretation permitting the communications, relied upon the express policy of the Workers' Compensation Law that seeks to avoid the delay and excessive costs caused by litigation and the adversarial system. ORS 656.012(2)(b); OAR 438-05-035.[8] The Board's interpretation is not inconsistent with this express policy, and it is

---

[8] ORS 656.012(2)(b) provides that an objective of the Workers' Compensation Law is:

"To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the

not our task on judicial review to evaluate these competing interests and substitute our judgment for the judgment of the Board on what policy provisions should prevail; this would be beyond our scope of review. ORS 656.298(6) and 183.482(8)(a).

## 2. *Type of Communications Contemplated*

Claimant next argues that the workers' compensation statutes and the rules, themselves, do not envision these types of communications. Moreover, claimant asserts that the existence of numerous detailed workers' compensation provisions governing written reports by physicians[9] manifests an intent to make written reports the exclusive mode of communication between an employer's lawyer and a claimant's treating physicians. We find this argument unpersuasive.

ORS 656.252(1) authorizes promulgation of rules regarding physician reporting.[10] Subsection (1) does not refer

adversary nature of the compensation proceedings, to the greatest extent practicable[.]"

OAR 438-05-035 states:

"*BOARD POLICY; LIBERAL CONSTRUCTION.* It is the policy of the Board to expedite claim adjudication and amicably dispose of controversies. These rules shall be liberally construed in favor of the injured worker to carry out the remedial and beneficent purposes of the Workers' Compensation Law. The overriding principle is substantial justice. With respect to postponement or continuance of hearings, substantial justice requires consideration of the relative financial hardship of the parties. The unrepresented injured worker shall not be held strictly accountable for failure to comply with these rules. Any individual who undertakes to represent a party in proceedings under these rules shall be required to comply with these rules."

[9] *E.g.,* OAR 436-10-030 (renumbered from OAR 436-69-101 and concerning reporting requirements for medical providers), OAR 436-10-100 (renumbered from OAR 436-69-801 and concerning independent medical examinations), OAR 438-07-005 (regarding presentation of medical evidence at hearings), and OAR 438-07-015 (regarding disclosure of claims information).

[10] ORS 656.252(1) provides:

"(1) In order to insure the prompt and correct reporting and payment of compensation in compensable injuries, the director shall make rules governing * * * reports by attending and consulting physicians and other personnel of all medical information relevant to the determination of a claim to the injured worker's representative, the worker's employer, the employer's insurer and the department. *Such rules shall include, but not necessarily be limited to:*

"(a) Requiring attending physicians to make the insurer or self-insured employer a first report of injury within a specified time after the first service rendered.

to "writing," but only to reports. We find no reason to presume a legislative intent to require all reports to be written or to restrict verbal communication between employers or their agents and injured workers' physicians. We note, in fact, that subsection (2) of ORS 656.252 explicitly requires physicians to "advise" insurers and self-insured employers within five days of a worker's anticipated release to return to work or the reopening of a claimant's closed claim and subsection (5) requires physicians to "notify" insurers or self-insured employers within five days of changes in physicians or referrals to new physicians. Nothing in the statute addresses *how* physicians are to report to, advise, or notify insurers or self-insured employers so long as the relay of information is prompt and correct.

Claimant further argues that repeated references to written reports in administrative rules reflect a policy of preventing "unnecessary intrusion into the confidentiality of the physician/patient relationship." This argument, however, also is belied by ORS 656.252(1), which provides that the purpose of the written report requirement is "to insure the prompt and correct reporting and payment of compensation in compensable injuries." The legislative history reveals considerable concern about promptness, but no discussion of protecting claimant confidentiality. *See, e.g.*, Minutes, House Committee on Labor and Management, March 22, 1967, pp 1-3. ORS 656.252 goes on to absolve complying physicians from legal liability for disclosure of medical confidences.[11] We

---

"(b) Requiring attending physicians to submit follow-up reports within specified time limits or upon the request of an interested party.

"(c) Requiring examining physicians to submit their reports, and to whom, within a specified time.

"(d) Such other reporting requirements as the director may deem necessary to insure that payments of compensation be prompt and that all interested parties be given information necessary to the prompt determination of claims.

"(e) Requiring insurers and self-insured employers to audit billings for all medical services, including hospital services." (Emphasis added.)

[11] ORS 656.252(4) provides:

"No person who reports medical information to a person referred to in subsection (1) of this section, in accordance with department rules, shall incur any legal liability for the disclosure of such information."

The purpose for this provision was to encourage prompt release of information and to prevent claimants and their legal counsel from using confidentiality concerns to

conclude that physician-patient confidentiality was of scant concern to the legislature in this context, especially in the face of competing concerns for promptness and accuracy.

ORS 656.252 is a non-exclusive outline of the types of communications physicians are required to initiate with insurers or self-insured employers. It is not an outline of any particular or exclusive mode for such communications. Therefore, the Board was free to interpret the statute in its rules to define permissible modes of communication.

The Board, in its opinion in *Alan W. Hayes, Jr.*, *supra*, interpreted the rules consistent with the stated purpose of the written reports. The Board stated:

> "We find nothing in the statutes or rules requiring an insurer to give claimant prior notice of its intent to contact his or her physician. Further, we find such a requirement is inconsistent with our stated policy of full, fair and expeditious disclosure of information between the parties. It is also inconsistent with the legislature's intent to create a compensation system that reduces litigation and minimizes the adversarial process." 37 Van Natta at 1182.

The Board was within its statutory power in so construing the statute.[12]

### 3. *Lack of Specific Reference*

In essence, claimant argues that the lack of a specific reference to communications of the type involved in this case within the statutes and rules means that such communications are not permitted. The Board takes the opposite view: it

delay or impede the flow of relevant medical information. Exhibit A, Summary of C Engrossed SB 48, May 24, 1979.

[12] We note that the dissent's interpretation of the statute (that a statutory requirement of written reports precludes oral communication between employers and claimants' physicians) might be plausible but for the context of this statute. The workers' compensation system is the antithesis of common-law tort rules regarding recovery for personal injury. All references to common-law sources outside the workers' compensation context are inapposite. The Oregon workers' compensation system was created by this state's legislature to streamline the process by which injured workers could be paid for compensable injuries. *See generally* ORS 656.012. Policy trade-offs were made in this streamlining effort, and it is not for this court to re-weigh competing policies. The legislature did not by statute expressly preclude employer/physician communication and, finding no evidence of legislative intent to do so, we decline to establish a limiting construction.

interprets the absence of specific references *prohibiting* this type of communication to mean that such communications *are* permitted. Although claimant's interpretation is a plausible one, and may be supported by the policy reasons stated above, the Board's interpretation of the rules also is reasonable and is not inconsistent with the Workers' Compensation Law and rules made pursuant to that law.

## CONCLUSION

We do not find the Board's interpretation of the Workers' Compensation Law to be erroneous, ORS 183.482(8)(a), and we defer to the Board's interpretation of its own rules.[13]

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is affirmed.

**UNIS, J.,** concurring in part, dissenting in part.

I agree with the majority's analysis of the physician-patient privilege in Part A of the opinion. I also agree with the majority that the fact that the statutes and rules do not provide for the physician-patient privilege in workers' compensation contested cases does not resolve the second question whether *ex parte*[1] communications between claimant's treating physicians and employer's lawyer are proper. I disagree, however, with the majority's conclusion in Part B of the opinion that the workers' compensation statutes contemplate this type of communication. Therefore, I dissent from Part B of the majority opinion.

On review of the Board's action, this court is to determine whether the agency has "erroneously interpreted a provision of law and that a correct interpretation compels a

---

[13] Claimant also relies on a Washington Supreme Court case, *Loudon v. Mhyre*, 110 Wash 2d 675, 756 P2d 138 (1988), a wrongful death tort claim. In that personal injury case, the court held that pre-hearing communications by defense counsel with the claimant's treating physician were not permitted despite waiver of the physician-patient privilege, thus limiting defense counsel to formal discovery methods.

That case is unpersuasive here due to the different context provided by the Workers' Compensation Law. We express no opinion on the persuasiveness of that case in its own context.

[1] The term *ex parte* as used in this opinion means communications with claimant's treating physicians by the employer or its representatives without the consent of claimant or claimant's counsel.

particular action." ORS 183.482(8)(a); *see* ORS 656.298(6) (review by the Court of Appeals as provided in ORS 183.482(8)). The Board, in its opinion in *Alan W. Hayes, Jr.*, 37 Van Natta 1179, 1182 (1985), stated:

> "We find nothing in the statutes or rules requiring an insurer to give claimant prior notice of its intent to contact his or her physician. Further, we find that such a requirement is inconsistent with our stated policy of full, fair and expeditious disclosure of information between the parties. It is also inconsistent with the legislature's intent to create a compensation system that reduces litigation and minimizes the adversarial process."

I agree with the majority that "[t]he Board is permitted * * * to adopt a general policy interpreting one of its rules that will be applicable to future cases." 312 Or at 473; *see Marbet v. Portland Gen. Elect.*, 277 Or 447, 461, 561 P2d 154 (1977) (discussing usual authority of administrative agencies to promulgate such rules). But "[a]n administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a statute." *Cook v. Workers' Compensation Dept.*, 306 Or 134, 138, 758 P2d 854 (1988). This court has stated:

> " 'A *statute which creates an administrative agency and invests it with its powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute.* It is the statute, not the agency, which directs what shall be done. The statute is not a mere outline of policy which the agency is at liberty to disregard or put into effect according to its own ideas of the public welfare.' " (Emphasis added.)

*U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 550, 542 P2d 900 (1975) (quoting *Gouge v. David*, 185 Or 437, 459, 202 P2d 489 (1949)). Thus, this court must determine whether the Board's interpretation of its rules in *Alan W. Hayes, Jr.*, *supra*, is consistent with its statutory authority. The Board discussed its authority for its ruling in *Alan W. Hayes, Jr.*:

> "The Oregon Legislature has declared that it is the policy of the Workers' Compensation Law 'to provide a fair and just administrative system * * * that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable.' ORS 656.012(2)(b). Pursuant to this policy, the Board has promulgated rules of

practice and procedure designed to 'expedite claim adjudication and amicably dispose of controversies.' OAR 438-05-035. Among these rules are those pertaining to the generation of documentary evidence.''

37 Van Natta at 1182.

ORS 656.012(2)(b), quoted in *Alan W. Hayes, Jr.*, *supra*, sets policy but does *not* give the Board rulemaking authority. OAR 438-05-035 and the other rules mentioned in *Alan W. Hayes, Jr.*,[2] were promulgated under the authority of ORS 656.726(4).[3] OAR 438-05-005. ORS 656.726(4) provides:

"The board may make and declare all rules which are reasonably required in the performance of its duties, including but not limited to rules of practice and procedure in connection with hearing and review proceedings * * *.''[4]

This statute does not specifically grant authority to the Board to authorize *ex parte* contact with claimant's treating physicians. Another statute, ORS 656.252, does specifically address contacts with physicians. The critical issue, not addressed by the majority, is whether ORS 656.252 in any way limits the Board's authority to establish rules governing contacts with treating physicians under ORS 656.726(4). I conclude that it does.

ORS 656.252(1) authorizes rulemaking governing two things: (1) "audits of medical service bills,"[5] and (2) "reports by attending and consulting physicians and other personnel of all medical information relevant to the determination of a claim." ORS 656.252(1)(a)-(e) specifies certain types of reports which the Board's rules shall govern. Those statutory provisions are prefaced by the qualifying phrase that "[s]uch rules shall include, but not necessarily be limited to [items specified in (1)(a)-(e)]." As the majority suggests,

---

[2] The Board mentioned that OAR 438-07-005(2), 438-07-005(6), and 438-07-015(2) and (3) were consistent with its policy and thus with its decision allowing *ex parte* contact. *Alan W. Hayes, Jr.*, 37 Van Natta 1179, 1182 (1985).

[3] At the time OAR 438-05-035 was promulgated, the subsection was ORS 656.726(5), but the wording was identical to current ORS 656.726(4).

[4] The director is also given a general grant of authority to "[m]ake and declare all rules which are reasonably required in the performance of the director's duties." ORS 656.726(3)(a).

[5] This phrase was added to the statute in 1987. Or Laws 1987, ch 884, § 3.

the Board may make rules other than those described in ORS 656.252(1)(a)-(e). 312 Or at 475.

However, this qualifying phrase *does* limit the Board's authority to make rules; the Board is only given authority to make "[s]uch rules" as defined earlier in ORS 656.252(1). That is, the Board may only make rules governing "reports by attending and consulting physicians and other personnel of all medical information relevant to the determination of a claim." Therefore, the statutory authority to make rules governing these "reports by attending and consulting physicians" not only limits the Board's rulemaking authority under ORS 656.252, but it also limits the Board's general rulemaking authority under ORS 656.726(4) and 656.726(3)(a). This is consistent with *Cook v. Workers' Compensation Dept., supra*; with *U. of O. Co-Oper. v. Dept. of Rev., supra*; and with *Smith v. Clackamas County*, 252 Or 230, 233, 448 P2d 512 (1969), *overruled on other grounds, Whipple v. Howser*, 291 Or 475, 487 n 6, 632 P2d 782 (1981) ("the inclusion of specific matter tends to imply a legislative intent to exclude related matters not mentioned").

A number of factors are helpful in determining what the phrase "reports by attending and consulting physicians and other personnel of all medical information relevant to the determination of a claim" means in the context of ORS 656.252. In the abstract, a report can be either written or oral. This court, therefore, looks to the context of the statute, to the purpose of or policy underlying the statute, and to legislative history. Accordingly, I will proceed in that order.

The context of the statute indicates that the word "reports" refers to "written reports." The reports referred to in ORS 656.252(1)(a)-(c) are described as items which are "submitted" or "made." ORS 656.254(1)[6] provides that the Board "shall establish medical report *forms* [*i.e.*, written] * * * to be used by * * * physicians." (Emphasis added.) Further, ORS 656.252(1) provides that the reports are to be submitted to "the injured worker's representative, the worker's employer, the employer's insurer *and* the department." (Emphasis added.) By using the conjunctive "and,"

---

[6] ORS 656.254 was enacted as part of the same bill that enacted ORS 656.252. Or Laws 1967, ch 626.

the legislature has specified that the reports are to be submitted to *all* of these groups inclusively, not to any one of them separately. The most plausible mechanism by which this can occur is through written reports; verbal reports could only satisfy this requirement if all parties are represented, as in a deposition-type setting. The conjunctive construction in ORS 656.252(1) indicates that, whether in verbal or written form, *ex parte* contact was not authorized. This is the policy underlying the statute.

In addition, ORS 656.252(4) provides immunity from legal liability when a person "reports medical information to a person referred to in subsection (1) of this section, in accordance with department rules." The only way that a physician can submit a report to "a [singular] person" under ORS 656.252(4) and have it submitted to all four parties in ORS 656.252(1) conjunctively is either for the report to be written so that the exact same report can be distributed to all parties or for all parties to be present if it is to be given verbally.

This reading of the statute is consistent with the policy underlying the statutory framework. The Board supported its determination that *ex parte* contact with physicians was allowed by quoting the language in ORS 656.012(2)(b) that the policy of the workers' compensation law is "[t]o provide a fair and just administrative system[7] * * * that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable." *Alan W. Hayes, Jr., supra,* 37 Van Natta at 1182. The

---

[7] I need not address whether allowing *ex parte* contact is consistent with the policy of providing a fair system.

As the majority points out in Part B(1), 312 Or at 472, claimant and *amicus* Oregon Trial Lawyers Association pointed to many sources recognizing a special relationship between patient and physician outside the context of the physician-patient evidentiary privilege. For recent discussions about the wisdom of allowing *ex parte* contacts and the treatment of the issue in other jurisdictions, *see* Annot., *Discovery: Right to Ex Parte Interview With Injured Party's Treating Physician,* 50 ALR 4th 714 (1986); Dalgleish, *Woytus and Ex Parte Physician Interviews in Missouri,* 47 J of Mo Bar 265 (June 1991); Dewey, Jr., and Heine, *Survey of Illinois Law - Evidence,* 15 So Ill Un L J 997 (1991); Comment, *Shielding the Plaintiff and Physician: The Prohibition of Ex Parte Contacts with a Plaintiff's Treating Physician,* 13 Campbell L Rev 233 (1991); Note, *Restricting Ex Parte Interviews with Nonparty Treating Physicians: Crist v. Moffatt,* 69 NC L Rev 1381 (1991); and Note, *Professional Ethics Codes in Court: Redefining the Social Contract Between the Public and the Professions,* 25 Ga L Rev 1327 (1991).

Board, quoting OAR 438-05-035, relied on the notion that the system must be expeditious, and went so far to say that not allowing *ex parte* contact "is inconsistent with [the Board's] policy of full, fair and expeditious disclosure of information." *Alan W. Hayes, Jr., supra*, 37 Van Natta at 1182. However, OAR 438-07-005[8] states that "[t]o avoid unnecessary delay and expense medical evidence should be presented in the form of written reports." Apparently, the Board itself does not consider the use of written reports to be contrary to the legislative policy of expeditious claim adjudication. Neither does the legislature. The purpose of ORS 656.252 is to "insure prompt and correct reporting," and the specific reports described in that section are, as I have shown, to be issued in written form and to be shared mutually.

Legislative history suggests that the word "reports" in ORS 656.252(1) was used to refer to "written reports." Reports were discussed as something to be contained in the file. House Bill 1594, as introduced, stated that the reports "shall be on forms established by the board."[9]

Even the administrative rule promulgated pursuant to ORS 656.252 expressly defines the term "report" as a written document. Division 10 of OAR 436, promulgated in part pursuant to ORS 656.252, OAR 436-10-001(1), defines "report" as "medical information transmitted in written form containing relevant subjective and objective findings. Reports may take the form of brief or complete narrative reports, a treatment plan, a closing examination report, or any forms as prescribed by the [Board]." OAR 436-10-003(36). It is interesting that this definition is the result of 1990 amendments, adopted after the Board's decision in *Alan W. Hayes, Jr., supra*.[10] Apparently the Board does not consider the legislature's description in ORS 656.252 of specific

---

[8] OAR 438-07-005 was proposed at the same time as OAR 438-05-035. OAR 438-05-005.

[9] This language was changed to "the director shall establish medical report forms" and was codified in ORS 656.254(1). *See* note 6, *supra*. This change in language arguably could support the idea that, because forms shall be established but not that reports "shall be on forms" as originally proposed, reports need not be written. However, this change in language could just as well support the idea that, while forms are provided, if the physician submits a report in letter format but not on a form, it still is considered a report. Legislative history does not indicate the significance of the change.

[10] The former rule, OAR 436-69-005(21), also promulgated in part to carry out

methods by which to obtain information from physicians to be a limitation on the Board's authority to establish rules regarding obtaining information in other ways. I disagree.

ORS 656.252 specifies how the Board is to obtain information from physicians. ORS 656.252(1) limits the Board's authority to promulgate rules for obtaining information to those methods consistent with ORS 656.252(1), absent a specific statutory authorization providing the authority for other methods. ORS 656.252(1) could reasonably be interpreted to allow either (1) rules regarding only written reports, or (2) rules regarding written reports and verbal reports in the presence of the injured worker's representative, the worker's employer, the employer's insurer, and the department, but not to allow *ex parte* contact.

I would hold that the Board's ruling in *Alan W. Hayes, Jr., supra*, that allows *ex parte* contact with the physicians as a part of the process of obtaining the reports was an erroneous interpretation of law and, therefore, that reliance on *Alan W. Hayes, Jr., supra*, for that proposition in the present case also was error.[11]

Because it is clear from the record that the seven exhibits, which consisted of letters describing claimant's condition from three of claimant's treating physicians, resulted from *ex parte* communications by the employer's lawyer with these physicians, I would reverse the decision of the Court of Appeals and remand this case to the Board to address, in the

---

the provisions of ORS 656.252, *former* OAR 436-69-004, defined "report" as "transmittal of medical information in a narrative letter, on a form or in progress notes from the worker's medical file. Reports may be handwritten but all shall be legible and include all relevant or requested information."

[11] Because I would hold that the Board's rule allowing *ex parte* contact was without statutory authority as required for immunity under ORS 656.252(4), it might follow (subject to the issue concerning, *inter alia*, reasonable reliance) that the rule would not provide the physician immunity for participating in *ex parte* contact. In the absence of this immunity, *Humphers v. First Interstate Bank*, 298 Or 706, 696 P2d 527 (1985), recognizes the existence of tort liability for the breach of a confidential relationship. *See also* ORS 677.190, which provides:

"The Board of Medical Examiners for the State of Oregon may refuse to grant, or may suspend or revoke a license to practice issued under this chapter for any of the following reasons:

"* * * * *

"(5) Willfully or negligently divulging a professional secret."

first instance, the appropriate consequences of the Board's use of evidence obtained as a result of the improper *ex parte* contact.

Fadeley, J., joins in this opinion.