Argued and submitted June 12, 2015, affirmed July 20, petition for review denied December 8, 2016 (360 Or 697)

Richard L. ZACH,
*Petitioner,*

*v.*

CHARTIS CLAIMS, INC.;
and Department of Consumer
and Business Services,
*Respondents.*

Department of Consumer and Business Services
1300009H; A155946

379 P3d 721

Philip M. Lebenbaum argued the cause for petitioner. With him on the briefs was Hollander Lebenbaum & Gannicott.

Jerald P. Keene argued the cause for respondent Chartis Claims, Inc. With him on the brief was Oregon Workers' Compensation Institute, LLC.

Denise G. Fjordbeck waived appearance for respondent Department of Consumer and Business Services.

Before DeVore, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

## GARRETT, J.

Claimant petitions for judicial review of a final order and order on reconsideration of the director of the Department of Consumer and Business Services (director) concluding that insurer properly terminated claimant's eligibility for vocational assistance. The director's final order reversed an order of an administrative law judge (ALJ) in claimant's favor. On judicial review, claimant asserts several errors below. We write only to address and reject claimant's contention that the director exceeded his statutory authority in reversing the ALJ's order. We affirm.

A discussion of the statutory framework for review of vocational assistance decisions is useful to frame our analysis. The Oregon legislature determined that vocational rehabilitation of injured workers "requires a high degree of cooperation between all of the participants in the vocational assistance process," and that disputes regarding eligibility for and extent of vocational services ought to be resolved "through nonadversarial procedures to the greatest extent possible consistent with constitutional principles." ORS 656.340(16)(a). To that effect, the legislature granted the director power to adopt by rule "a procedure for resolving vocational assistance disputes," consistent with several statutory mandates, which we now discuss. *Id.*

Under ORS 656.340(16)(b), if a worker is dissatisfied with an insurer's or employer's action regarding vocational assistance, the worker may apply to the director for administrative review of the matter. If the parties are unable to resolve the dispute by agreement, the director "shall resolve the matter in a written order based on a record sufficient to permit review." ORS 656.340(16)(d). The director may delegate to the Workers' Compensation Division authority to conduct the initial review and to issue the administrative order on the director's behalf. *See* ORS 705.135(1) (authorizing delegation of "any duties, powers and functions of the director"); OAR 436-120-0006(2) ("Orders issued by the [Workers Compensation Division] in carrying out the director's authority to administer and to enforce ORS chapter 656 and these rules are considered orders of the director.").

That initial order is subject to review under ORS 656.704, which allows a dissatisfied party to request a hearing before an ALJ. ORS 656.704(2)(a); ORS 656.340(16)(d). The ALJ's order, in turn, is reviewable by the director, who then issues a "final order" that is subject to judicial review under ORS 183.480 to 183.497. ORS 656.704 ("Review of an order issued by the Administrative Law Judge shall be by the director and the director shall issue a final order that is subject to judicial review as provided by ORS 183.480 to 183.497."). Our review of the director's final order is for legal error and substantial evidence. *Liberty Northwest Ins. Corp. v. Jacobson,* 164 Or App 37, 39, 988 P2d 442 (1999); ORS 183.482(8).[1]

We now turn to the relevant facts of this case, which are undisputed. Claimant, who was employed as a window installer, suffered a compensable injury to his right hand and was found eligible for vocational assistance by his insurer, Chartis Claims, Inc. In September 2012, claimant identified a new occupational goal for which he could be trained and enrolled in classes at a community college to complete a retraining program. Claimant's vocational rehabilitation counselor, De Oliveira, prepared a return-to-work plan based on the occupational goal and retraining program that claimant had selected. When claimant met with De Oliveira on September 27, 2012, however, claimant

---

[1] ORS 183.482 provides, in part:

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

refused to sign that plan and indicated that he no longer wished to pursue the training goal because of his concerns about the educational program. Claimant explained that he lacked the computer skills necessary to participate in the program and found the classroom atmosphere to be "unprofessional." De Oliveira then suggested that claimant contact his attorney to discuss settling his claim through a "buyout" of his vocational benefits.

That same day, De Oliveira mailed claimant a letter warning him that he could lose his eligibility for vocational assistance if he did not contact her by October 5, 2012, to develop new vocational goals. The letter noted that it was a written warning pursuant to OAR 436-120-0165, which provides:

> "A worker's eligibility [for vocational assistance] ends when any of the following conditions apply:
>
> "* * * * *
>
> "(9) The worker failed after written warning to participate in the development or implementation of a return-to-work plan. No written warning is required if the worker fails to attend two consecutive training days and fails, without reasonable cause, to notify the vocational counselor or the insurer by the close of the next business day."

The letter reflects that it was also copied to claimant's attorney; although claimant acknowledged receipt of the letter prior to the October 5 deadline, claimant's attorney never received the letter in the mail and saw it only when claimant later showed it to him in November.

On September 28, 2012—the day after she sent the warning letter—De Oliveira spoke with claimant and his attorney by telephone to discuss that letter and to reiterate that they needed to contact her by October 5 to develop a return-to-work plan. When neither claimant nor his attorney responded by that date, De Oliveira issued a written notice to claimant terminating his eligibility for vocational services under OAR 436-120-0165(9). Claimant requested review of that decision by the director under the administrative scheme described above.

Claimant's request for administrative review was assigned to the Workers' Compensation Division Employment Services Team (EST) for "investigation and findings of facts." In connection with that investigation, claimant's attorney submitted a written declaration explaining that he had not seen the warning letter until claimant showed it to him on November 2, 2012; that, sometime between September 21 and October 1, claimant had called to express frustration with the retraining program and to say that De Oliveira had suggested that claimant consider settlement; and that, on October 1, 2012, he wrote a letter to the insurer initiating settlement discussions. Claimant also submitted a declaration describing various difficulties that claimant had encountered in the retraining program and recounting his September 27 meeting with De Oliveira.

On November 14, 2012, the parties participated in a telephone conference facilitated by Cummings, a vocational reviewer and member of EST. During that conference, De Oliveira reiterated that, after meeting with claimant on September 27, she spoke with both claimant and his attorney on September 28 regarding the warning letter and to emphasize the importance of the October 5 deadline. Claimant's attorney explained that, although he had no doubt that De Oliveira had sent the letter, he did not receive it and that, if he had, he would have advised claimant to comply. The following day, claimant's attorney called EST to explain that, at the time the warning letter was issued, he had been working on settling claimant's case. According to claimant's attorney, claimant did not respond to the letter because he was waiting for his attorney's advice and, although De Oliveira had told counsel about the letter, he assumed that it had not been issued when he did not receive it in the mail.

Cummings issued an administrative order setting aside the insurer's decision to terminate claimant's eligibility for vocational assistance. In that order, Cummings framed the issue as whether, under the circumstances of claimant's case, it was reasonable to expect claimant to comply with the warning letter without first receiving advice from his attorney. Cummings concluded that it was not:

"[Claimant] had been actively participating in the development of the [return-to-work-plan] and had only stopped participating when he followed his vocational counselor's recommendation to speak to his attorney about a [settlement]. Following this, [claimant] received the letter [his attorney] sent to [the insurer's attorney], initiating [settlement] discussions. This is a critical juncture for workers to receive counsel as it can appear, as I do believe it did in [claimant's] case, that if their attorneys are initiating [settlement] talks, the need to comply with a warning letter is stayed. * * *

"Given the individual circumstances of this specific case, I find it was not reasonable to expect [claimant] to comply with the warning letter without first receiving counsel from his attorney; and because [his attorney] did not receive the warning letter until November 9,[2] 2012, he could not timely provide such counsel to [claimant]."

The order directed the insurer to reinstate claimant's eligibility for vocational assistance.

Insurer requested a hearing before an ALJ, who affirmed the administrative order. The ALJ observed that the case was governed by the first clause of OAR 436-120-0165(9), which provides that vocational assistance ends if "[t]he worker failed after written warning to participate in the development or implementation of a return-to-work plan." That clause, the ALJ acknowledged, makes no reference to "reasonable cause." Nevertheless, the ALJ concluded that the administrative order did not err by applying a reasonableness standard and that the "factual finding" that claimant had acted reasonably was "within the range of legally-permissible discretionary choices." Insurer requested review of the ALJ's order by the director pursuant to ORS 656.704(2).

The director reversed, concluding that claimant's eligibility for vocational services was properly terminated.[3]

[2] It appears from the record that the order's reference to November 9 was a scrivener's error, and that the date should have been November 2. The error is inconsequential to the issues on appeal.

[3] In the final order, the director explained the standard of review that he applied:

"As this is a vocational services dispute, I may only modify the administrative order if it violates a statute or rule, exceeds the director's statutory

The director explained that it was not necessary to decide whether a "reasonableness" standard applies, because, even if it does, the evidence did not support the conclusion that claimant had acted reasonably in response to the warning letter.[4]

Claimant sought reconsideration of the final order by the director, contending, among other things, that, in determining that claimant had not acted reasonably, the director impermissibly substituted his judgment for that of his delegate in violation of the standard of review under ORS 656.340(16)(d). The director responded that the final order concluded, as a matter of law, that there was only one reasonable conclusion that could have been drawn from the evidence—specifically, that claimant did not act reasonably in response to the warning letter. EST's contrary conclusion, the director explained, was an "abuse of discretion" under ORS 656.340(16)(d). Thus, the director denied claimant's request for reconsideration of the final order; this petition for judicial review followed.

---

authority, was based on an unlawful procedure, or constitutes an unwarranted abuse of discretion. ORS 656.340(16)(d); OAR 436-00[1]-0225(3)."

[4] The director explained that, assuming that settlement negotiations caused claimant to disregard the letter, claimant's actions in response to the letter were unreasonable as a matter of law for several reasons. First, claimant was "clearly aware" of the value of his vocational services and had actual knowledge of the letter—he received it and spoke to De Oliveira about it. According to the director, a reasonable person in claimant's position would have been concerned about protecting his vocational benefits and would have contacted either his attorney or the vocational counselor to discuss the letter. Second, both claimant and his attorney had actual knowledge of the letter prior to the October 5 deadline—neither disputed De Oliveira's statements that they had spoken by phone on September 28 regarding the letter, and that, as of that date, the letter had already been mailed. Moreover, although both claimant and his attorney spoke with De Oliveira and each other before October 5, "neither took any action to either respond to the warning letter, to explore its consequences, or to find out from De Oliveira whether she still intended to enforce the warning letter deadline." Thus, the director concluded that claimant's attorney's failure to discuss the letter with claimant or contact De Oliveira about any potential effect of settlement negotiations on the October 5 deadline was also unreasonable.

Finally, the director observed that claimant offered no explanation as to "where he would have gotten the idea that settlement negotiations stayed the warning letter deadline." To the contrary, "[t]hat De Oliveira emphasized on September 28 that claimant needed to respond to the warning letter by October 5 means both that De Oliveira *did not* suggest to claimant that the warning period was stayed and that claimant would [not] have had any reasonable basis to believe that it was." (Emphasis added.)

On judicial review, claimant challenges the director's order on several grounds. Our review of an agency order is governed by ORS 183.482(8), under which we review the director's final order for errors of law and substantial evidence. We write only to address claimant's argument that the director exceeded his statutory authority in his review of the ALJ's order.

Under ORS 656.340(16)(d), when a claimant seeks a hearing on the director's initial order, the order may be modified "at the hearing" only if that order:

"(A)   Violates a statute or rule;

"(B)   Exceeds the statutory authority of the agency;

"(C)   Was made upon unlawful procedure; or

"(D)   Was characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The ALJ's order is then subject to review by the director under ORS 656.704(2)(a). Although the ALJ's review of the initial administrative order is limited by the legal grounds set forth in ORS 656.340(16)(d), the director's review of the *ALJ's order* under ORS 656.704(2)(a) is not similarly limited, at least not explicitly. Nevertheless, the director assumed below that his review of the ALJ's order was circumscribed by the same ORS 656.340(16)(d) factors that apply to the ALJ's review of the initial administrative order. Neither party on appeal suggests that the director erred in that assumption. Accordingly, for purposes of this decision, we similarly assume that the director's final order may reverse a decision of the ALJ only for one or more of those statutorily-enumerated reasons. As explained below, we conclude that the director acted within that statutory authority.

The legislature has delegated to the director broad authority to define policy with regard to vocational assistance. *See* ORS 656.726(4) (authorizing the director to "make and declare all rules and issue orders which are reasonably required in the performance of the director's duties"); ORS 656.340(16)(a) ("The director shall adopt by rule a procedure for resolving vocational assistance disputes in the manner

provided in this subsection."). The director promulgated OAR chapter 436 pursuant to that grant of authority. OAR 436-120-0001. Our review of the director's interpretation of the director's own rules is "largely deferential." *See Booth v. Tektronix*, 312 Or 463, 473, 823 P2d 402 (1991). "We defer to the agency's plausible interpretation of its own rule— including an interpretation made in the course of applying the rule—if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law." *Papas v. OLCC*, 213 Or App 369, 377, 161 P3d 948 (2007).

As noted, OAR 436-120-0165(9) provides that a worker's eligibility for vocational benefits ends if:

> "[*t*]*he worker failed after written warning to participate in the development or implementation of a return-to-work plan.* No written warning is required if the worker fails to attend two consecutive training days and fails, without *reasonable cause*, to notify the vocational counselor or the insurer by the close of the next business day."

(Emphases added.)

Although the term "reasonable cause" appears only in the second clause of that rule, the initial order by EST effectively applied a reasonableness standard to the first clause, concluding that it was not reasonable to require claimant to have responded to De Oliveira's warning letter without first receiving advice from his attorney. As previously noted, in his final order, the director did not decide whether a reasonableness standard was applicable, but nonetheless explained why he rejected the initial administrative determination that claimant had acted reasonably. The director noted that claimant had received the warning letter, had spoken with De Oliveira about the letter's deadline, and had made contact with his attorney, all prior to the expiration of that deadline. The director reasoned that claimant had had both the opportunity and the incentive to contact either his vocational counselor or his attorney prior to the expiration of the warning letter deadline, but had failed to do so. Further, although claimant's *attorney* had offered many reasons why it was reasonable for him not to respond to the warning letter, claimant himself had not presented any reason why he could not comply with the rule's

requirement to participate in the development of a return-to-work plan. Finally, the director reasoned that the explanations offered by claimant's attorney did not line up with the record. In short, as we understand the director's order, it determined that the ALJ's order was an "abuse of discretion" because the evidence fell short of what was required to permit a conclusion that claimant acted "reasonably" for purposes of OAR 436-120-0165(9).

In challenging the director's final order on appeal, claimant argues that the question of whether claimant acted reasonably is essentially a factual one, and that the evidence in the record was capable of supporting *either* a determination that claimant acted reasonably or a determination that he did not. As a result, according to claimant, no "abuse of discretion" occurred in Cummings's or the ALJ's determination that claimant acted reasonably; rather, the director's final order simply (and erroneously) substituted the director's own judgment on that factual issue. Insurer disagrees that the question of claimant's "reasonableness" is purely a factual issue in this context; rather, according to insurer, the director's conclusion that claimant acted unreasonably as a matter of law reflects, at its core, a policy determination and a plausible interpretation of OAR 436-120-0165(9). Thus, the director was entitled to view the administrative order as an abuse of discretion inasmuch as it was based on an understanding of the rule that the director ultimately rejected.

With a slight qualification, we agree with the insurer. That qualification is this: The director's final order characterized the earlier decisions as an "abuse of discretion" under ORS 656.340(16)(d)(D). We understand the director's conclusion to be, in reality, that both the initial administrative order and the ALJ's order were based on a misapplication of OAR 436-120-0165(9). Accordingly, the basis for the director's reversal might have been more aptly cited as ORS 656.340(16)(d)(A) (allowing modification of the administrative order if that order "[v]iolates a statute or rule"). That is so because, while an "abuse of discretion" typically refers to a decision made outside a range of legally permissible choices, the director's interpretation of

OAR 436-120-0165(9) resulted in only one conclusion being available—that is, that claimant had not acted reasonably.

The director did not exceed his statutory authority. That is primarily because we reject claimant's characterization of "reasonableness" as a purely factual question in this context. "Facts" have been described as "those elements entering into the decision that describe phenomena and events without reference to their significance under the law in question, or to put it another way, as they might be described by a lay person unaware of the disputed legal issue." *McPherson v. Employment Division*, 285 Or 541, 547-48, 591 P2d 1381 (1979). Here, the undisputed events leading up to the termination of claimant's eligibility for vocational assistance and the reasons given by claimant for failing to respond to the warning letter are factual issues. *See id.* at 548. Whether or not claimant's actions were *reasonable* under the applicable rule, however, is a mixed question of law and fact. *See Providence Health System v. Walker*, 269 Or App 404, 407, 344 P3d 1115 (2015) ("Whether an action is reasonable depends on the underlying facts and, based on those facts, whether the conclusion the [Workers' Compensation Board] made constitutes an error of law.").

As insurer points out, the director's disagreement with the ALJ is less about competing inferences from the facts than it is a "different policy determination over the nature of the circumstances that suffice to establish such 'reasonable cause.'" We agree that evaluating whether or not a claimant's actions are reasonable for purposes of OAR 436-120-0165(9) requires, in part, a policy determination that we review in light of the legislature's delegation to the director of the responsibility for resolving vocational assistance disputes under ORS 656.340(16)(a). *Cf. McPherson*, 285 Or at 550 (for purposes of unemployment compensation, evaluating whether "good cause" exists calls for "completing a value judgment" as to "what are 'good' reasons for giving up one's employment and what are not"). Moreover, the director's resolution of that question must be viewed in context of the director's role within the agency. As explained above, resolution of vocational assistance disputes is entrusted to the director, who is responsible for promulgating rules pursuant to the authority granted to him by ORS 656.340(16)(a).

In that respect, the director *is* the "agency" for purposes of rulemaking and policy-setting. *See Trebesch v. Employment Division*, 300 Or 264, 272, 710 P2d 136 (1985) (assistant director of the Employment Division "is the 'agency' for purposes of rulemaking" notwithstanding the authority of the initial decision-makers and referees to issue orders). And, although the director's delegate is responsible for issuing the initial administrative decision, which is then subject to review by an ALJ, the director remains "the only entity with both adjudicative authority and substantive rulemaking power." *Id.* Because the director is both the source of the policy promulgated in the rule and the final agency arbiter in the vocational dispute process, the director's plausible interpretation of his own rule is entitled to deference. *See Johnson v. Employment Dept.*, 187 Or App 441, 448 n 3, 67 P3d 984, *rev den*, 336 Or 60 (2003) ("If the authorized representative has acted inconsistently with the director's policy choice, the director can exercise his or her authority to review the decision and clarify the department's policy." (Citing *Trebesch*, 300 Or at 276-77.)).

In short, we understand the director to have reversed the ALJ because, based on the director's interpretation of OAR 436-120-0165(9), claimant's evidence failed, as a matter of law, to demonstrate a "reasonable" basis for noncompliance with that rule. Because the director's interpretation of that rule is a plausible one, we affirm the order.

Affirmed.