Argued and submitted January 19, 2016, affirmed March 22, 2017

Debi MEIER,
*Respondent,*

*v.*

SALEM-KEIZER SCHOOL DISTRICT,
*Petitioner,*
*and*

FAIR DISMISSAL APPEALS BOARD,
*Respondent.*

Fair Dismissal Appeals Board
FDA1301; A155836

392 P3d 796

Paul A. Dakopolos argued the cause for petitioner. On the briefs were Rebekah R. Jacobson and Garrett Hemann Robertson P.C.

Noah T. Barish argued the cause for respondent Meier. With him on the brief were John S. Bishop and McKanna Bishop Joffee, LLP.

Denise G. Fjordbeck waived appearance for respondent Fair Dismissal Appeals Board.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**EGAN, J.**

The Salem-Keizer School District seeks judicial review of an order of a panel of the Fair Dismissal Appeals Board (FDAB), contending that the FDAB erred in reversing an order of the district dismissing respondent from her position as a full-time contract teacher and counselor at McNary High School. The facts are not in dispute. In reviewing the FDAB's order for substantial evidence and errors of law, *see* ORS 183.482(8)(a); ORS 342.905(9) (providing for review of FDAB orders under the Oregon Administrative Procedures Act), we conclude that the FDAB did not err and therefore affirm.

We take our summary of the facts from the parties' stipulations, from the undisputed facts stated in the record, and from the FDAB's findings, which are not challenged on judicial review. *Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991) (unchallenged findings are the facts for purposes of judicial review of FDAB's order). Respondent has worked as a teacher or counselor since 1986, and she has a master's degree in counseling. She began working for the district as a counselor in 2005. At the end of the 2008-09 school year, respondent's supervisor described her as "an excellent counselor and a professional educator that really cares about kids."

As a school district employee, respondent was a "mandatory reporter" and had a duty under ORS 419B.010[1] and under district policy to make a report to the Oregon Department of Human Services (DHS) or to law enforcement when she had "reasonable cause" to believe that a child with whom she had come into contact had suffered abuse

---

[1] ORS 419B.010(1) provides, as relevant:

"Any public or private official having reasonable cause to believe that any child with whom the official comes in contact has suffered abuse or that any person with whom the official comes in contact has abused a child shall immediately report or cause a report to be made in the manner required in ORS 419B.015."

A person having reasonable cause to believe abuse has occurred who violates ORS 419B.010(1) by failing to make a report commits a Class A violation. ORS 419B.010(5).

within the meaning of ORS 419B.005(1)(a).[2] The district has adopted the identical requirement in its policies.[3] The district also has a "Sexual Incident Response Committee protocol," which requires district employees to initiate certain steps upon hearing of a sexual incident. The district's training materials include a statement that the failure to report suspected abuse is a violation of policy that could result in disciplinary action. During her employment with the district, respondent has attended all required trainings relating to the mandatory reporting obligation and has regularly filed reports of suspected abuse.

The circumstances of respondent's dismissal arose out of her decision not to initiate the district's protocol process or to report to DHS or to law enforcement a report of an alleged incident of abuse made by a 17-year-old girl who was an eleventh grader at McNary High School during the 2011-12 school year. The child has a relatively low IQ and is enrolled in special education classes. Respondent was the child's guidance counselor. Although respondent had never counseled her before, the child was an aide in the school's counseling office during the 2011-12 academic year, and respondent had periodically visited with her. Respondent testified that the child was not shy toward her and was always smiling and bubbly.

One morning in May 2012, the child arrived at her first period class in tears and upset. She told the teacher that she and her mother had had a fight. She would not enter the

---

[2] As relevant here, ORS 419B.005(1)(a)(D) defines the relevant type of abuse as "[s]exual abuse, as described in ORS chapter 163." ORS 163.415(1), in turn, defines sexual abuse in the third degree as follows:

"A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"(A) The victim does not consent to the sexual contact; or

"(B) The victim is incapable of consent by reason of being under 18 years of age; or

"(b) For the purpose of arousing or gratifying the sexual desire of the person or another person, the person intentionally propels any dangerous substance at a victim without the consent of the victim."

[3] The district's policy states that "all district employees who have reasonable cause to believe that a child has been abused or neglected must immediately make an oral report to [law enforcement or DHS]."

classroom, and an instructional assistant escorted the child to the counseling office. When the child arrived, respondent came out and brought the child to her office. Respondent testified that the child smiled when she saw respondent and that at that time she did not show any sign of being upset and seemed "fine, mood wise."

In her office, respondent asked the child what she needed to talk about, and the child abruptly stated, "A little more than a year ago my brother molested me." Respondent observed that the child seemed like she always did and did not seem upset. She was aware that the child had relatively low cognitive abilities. To understand what the child meant by "molested," respondent asked, "Well, tell me what that means to you. When you say that, what does it mean?" The child said that her brother had touched her. When respondent asked where the child had been touched, the child gestured with her hand in a circular motion in front of her upper torso area, making a large circle in the air from approximately her neck down to her stomach area. The child did not use words to describe the touching and did not say that she had been touched on her breasts.

Although not mentioned by the FDAB in its findings, on cross-examination at the hearing, respondent acknowledged that she told an investigating police officer that she had asked the child whether there had been any *inappropriate* touching by her brother and that the child had responded, "Yeah." Nonetheless, respondent testified that, based on her conversation with the child, her familiarity with the child, and her experience and training, she had concluded that the touching had not been sexual in nature. At the time of the described conduct, the child's brother would have been 11 or 12 years old. Respondent testified that, in describing the conduct, the child had not seemed distressed in the way one might expect from someone reporting sexual abuse, which the child said she had been able to stop. Respondent concluded that the interaction was a matter of a little brother being a "little pill" or "kind of a jerk." Respondent told the child that she intended to contact the child's mother, and the child did not object. The child appeared to be fine, and appellant sent her back to class.

At the end of the school day, respondent related her conversation with the child to Smith, her immediate supervisor, and reported her plan to contact the child's mother. Respondent testified that she made no report to DHS or to law enforcement "[b]ecause from the conversation I had with [the child], there was nothing sexual about what was going on or no abuse of any kind. It seemed more like a younger brother harassing an older sister." Respondent also did not initiate the district's Sexual Incident Response Committee process, because she concluded that the child had not reported a "sexual" incident to her.

The child's parents are divorced, and the child lives with her mother, regularly visiting her father. In the school's database, the mother's contact information came up first. Respondent spoke with the mother by telephone, explaining that the child had used the word "molested" to describe her brother's actions a year before. The mother said that she doubted it had happened and that she needed to talk with the child. Respondent also encouraged the mother to talk with the younger brother and with the child's father. The mother explained that she and the father did not communicate well, but that she would talk to him. The next week, the child and her mother followed up with respondent in a personal meeting at respondent's office.

In October 2012, the child told her father and stepmother that she had been sexually abused by her brother and that she had reported the abuse to respondent. At a meeting between the child's father, respondent, and a district administrator, the father related the child's report that she "had been molested, sexually abused, by her brother at her mother's house," and expressed anger at not having been contacted by respondent. He accused respondent of failing to fulfill her statutory duties and threatened legal action. Respondent related to the father her conversations with the child and the child's mother in May 2012, but denied that the child had reported that she had been sexually abused. Several days after the meeting, the father filed a complaint with the school district that resulted in this disciplinary process.

The district placed respondent on administrative leave and began an investigation of the father's allegations.

In November 2012, district superintendent Husk notified respondent that she would recommend respondent's dismissal from the district's employment. The district's board upheld the superintendent's recommendation and voted to dismiss respondent on the grounds of neglect of duty and insubordination, based on respondent's failure to initiate a report of suspected sexual abuse of the child to DHS or to law enforcement as required by ORS 419B.010, or to follow the district's sexual abuse response protocol.

Under ORS 342.905, when a district school board dismisses a teacher, the teacher may appeal the dismissal to the FDAB. Respondent appealed the district's decision to the FDAB. At the conclusion of the hearing, the FDAB issued a written decision pursuant to ORS 342.905(6) and (7).[4]

---

[4] ORS 342.905(6) and (7) provide, as relevant:

"(6) When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written decision and send it to the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal or nonextension are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. *** The panel shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy.

"(7)(a) Subject to subsection (6) of this section and paragraph (b) of this subsection, if the Fair Dismissal Appeals Board panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal or nonextension, and so notifies the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, the teacher shall be reinstated and the teacher shall receive such back pay as ordered by the Fair Dismissal Appeals Board panel for the period between the effective date of the dismissal or nonextension and the date of the order reinstating the teacher, or the date when the district actually reinstates the teacher, whichever is later. However, nothing in this section requires a school district to pay the teacher until the reinstatement occurs if the district has other legal grounds for not reinstating the teacher."

The Supreme Court has stated that, under the text of the statute, the FDAB panel is charged with determining whether the facts relied on to support the statutory grounds cited for dismissal are "true and substantiated" and, in that capacity, has the role of "primary factfinder." *Bergerson v. Salem-Keizer School District*, 341 Or 401, 410, 144 P3d 918 (2006).

The FDAB noted that the district's factual allegations were subject to a preponderance of the evidence standard of proof. OAR 586-030-0055(5). In a lengthy order, the FDAB made the findings that we have summarized. Those findings, which include a finding that respondent was a credible witness, are not challenged on judicial review.

In the "conclusions of law" section of it order, the FDAB rejected each of the alleged grounds for dismissal.[5] Underlying the FDAB's rejection was its disagreement with the district's assertion that the child's report to respondent that she had been "molested," accompanied by the child's description of the physical location of the touching, constituted a report of sexual abuse as a matter of law. The FDAB concluded that, in considering whether she had been presented with a report of sexual abuse, respondent could rely on her familiarity with the child, her conversation with the child, her years of experience as a counselor, her training, and the fact that the child had not explicitly reported sexual touching.[6] The FDAB further determined that, based on respondent's description of the child's answers and demeanor during their conversation, respondent could reasonably conclude that the child was not describing sexual contact, *i.e.*, that although there was evidence that the child had been touched, there was no evidence that she had been touched in an intimate area or that the touching had been sexually

---

[5] The FDAB concluded, as relevant:

"2. The factual allegation that [respondent] admitted she did not report the child's disclosure to her in May 2012 to law enforcement or to the Oregon Department of Human Services is true and substantiated. The factual allegation that [respondent] admitted she did not report *sexual abuse* to law enforcement or to the Oregon Department of Human Services is *not* true or substantiated.

"3. The factual allegation that [the child] described sexual abuse to [respondent] when the child visited [respondent] in her office in May 2012 is not true or substantiated.

"4. The factual allegation that [respondent] had reasonable cause to believe that the child reported sexual abuse to [respondent] in May 2012, such that [respondent] had a duty under law or District policy to report sexual abuse, is not true or substantiated."

(Emphasis in original.)

[6] Notably, the FDAB did not determine that respondent could rely on information that she learned from her conversations with the child's mother, and there is no evidence that respondent in fact relied on that information in forming her belief that there had not been sexual abuse.

motivated. The FDAB further concluded that the evidence required the conclusion that respondent did not have reasonable cause to conclude that the child had described sexual contact, because the child had not described sexual contact.

Having concluded that the child had not reported sexual contact, the FDAB determined in its original order and in an order on reconsideration that respondent did not have a duty to report sexual abuse and had not violated Oregon law or the district's policy. The FDAB therefore set aside respondent's dismissal and ordered the district to reinstate respondent to her position, with full back pay. The district has sought judicial review of the FDAB's order.[7]

In its first assignment of error, the district argues that the FDAB erred as a matter of law in concluding that the evidence did not establish that the child's disclosure constituted reportable sexual abuse as a matter of law.[8] In the district's view, having found that the child had disclosed to respondent that she had been "molested" and that the conduct was unwelcomed, the FDAB was required to conclude that there had been reportable sexual abuse.[9] In the district's view, it was not respondent's role as a mandatory reporter to assess whether the child's report constituted a claim of sexual abuse or investigate the child's claims. The first assignment thus raises the question of the extent to which a mandatory reporter is permitted to exercise independent judgment in determining whether a report provides

---

[7] ORS 342.905(9) provides that "[a]n appeal from action of the Fair Dismissal Appeals Board panel shall be taken in the manner provided in ORS 183.480."

[8] We reject without discussion respondent's contention that the district's request for judicial review is moot because the district has not challenged respondent's reinstatement to her position.

[9] The district asserts that, if substantiated, the conduct described by the child constitutes sexual contact, as defined in ORS 163.305 (sexual contact, for purposes of sexual abuse in the third degree, is "any touching of the sexual or other intimate parts of a person *** for the purpose of arousing or gratifying the sexual desire of either party"). The district notes that, at the hearing, respondent testified that it sounded as if the child's brother was "trying to touch a boob," and that she found that behavior concerning. But respondent also testified that, based on her conversation with the child, she did not think that the brother had a purpose of sexual gratification. The FDAB found that a preponderance of the evidence "supports a finding that [respondent] reasonably construed the child's comments to her in May 2012 as a description of the child's brother teasing the child, engaging in non-sexual horseplay, or attempting to touch the child's breasts in a non-sexual way."

"reasonable cause" to conclude that there was abuse. ORS 419B.010(1) (requiring a report by "[a]ny public or private official having reasonable cause to believe that any child with whom the official comes in contact has suffered abuse").

The term "reasonable cause" as used in ORS 419B.010(1) is a legal standard that guides the determination as to whether a mandatory reporter has a statutory obligation to report child abuse. It is not defined in the relevant statutes, and we have never considered its meaning in the context of ORS 419B.010. But, in *A. F. v. Oregon Dept. of Human Services*, 251 Or App 576, 583, 284 P3d 1189 (2012), (citing *Berger v. SOSCF (A117291)*, 195 Or App 587, 591, 98 P3d 1127 (2004)), we did consider the meaning of the term as it relates to a law enforcement agency's and DHS's investigation of child abuse, *see* ORS 419B.020;[10] OAR 413-015-1000 (providing that, in making an assessment, a child protective services worker "must determine whether there is reasonable cause to believe child abuse or neglect occurred"), and concluded that "reasonable cause" "is equivalent to reasonable suspicion, a 'very low evidentiary threshold for deciding that a complaint is founded.'"[11] 251 Or App at 584.

---

[10] ORS 419B.020 provides:

"(1) If the Department of Human Services or a law enforcement agency receives a report of child abuse, the department or the agency shall immediately:

"(a) Cause an investigation to be made to determine the nature and cause of the abuse of the child; * * *

"* * * * *

"(3) If the law enforcement agency conducting the investigation finds reasonable cause to believe that abuse has occurred, the law enforcement agency shall notify by oral report followed by written report the local office of the department. The department shall provide protective social services of its own or of other available social agencies if necessary to prevent further abuses to the child or to safeguard the child's welfare."

[11] We recently held in *Nulph v. Board of Parole*, 279 Or App 652, 381 P3d 948 (2016), *rev allowed*, 360 Or 851 (2017), that, as used in ORS 144.228(1)(c), relating to the Board of Parole and Post-Prison Supervision's obligation in considering a request for a parole consideration hearing to determine whether a condition that made an inmate dangerous is in remission, the term "reasonable cause" is a "delegative term" that expresses an incomplete legislative meaning that the agency is authorized to complete. We said that the phrase was similar to other terms, such as "reasonable diligence" or "unreasonable," that courts have described as delegative, and that, as used in ORS 144.228, the phrase "appears to contemplate that the board make a value judgment or policy determination about what type of evidence provides 'reasonable cause' to believe that a petitioner's dangerous

We conclude that that same meaning should apply to the term "reasonable cause" as used in ORS 419B.010(1), which was enacted at the same time as ORS 419B.020, as a part of the same act, and relates to the same subject matter. Or Laws 1993, ch 546, §§ 14, 16. The parties do not dispute that a "reasonable suspicion" standard applies in determining whether a mandatory reporter has "reasonable cause" to believe that a child has suffered abuse.

As an initial matter, we reject the district's contention that, in light of the child's statement that she had been "molested," respondent could not make any inquiry of the child or exercise independent judgment in determining whether the child's statement, combined with her physical description of the touching, presented reasonable cause to believe that she had reported abuse. "Reasonable suspicion" is a standard that depends on inferences drawn from the particular circumstances. *See State v. Walker*, 277 Or App 397, 402, 372 P3d 540, *rev den*, 360 Or 423 (2016) (whether an officer's subjective suspicion of criminal activity is objectively reasonable will often depend on the inference drawn from the particular circumstances confronting the officer); *State v. Berry*, 232 Or App 612, 617, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010) (in evaluating the objective reasonableness of an officer's belief that a crime has been committed, we examine the totality of the facts and circumstances, including the officer's training and experience); OAR 413-015-0115(38) (defining "reasonable suspicion" for

condition has diminished under the particular facts of each case." *Id.* at 658. *See also Zach v. Chartis Claims, Inc.*, 279 Or App 557, 379 P3d 721, *rev den*, 360 Or 697 (2016) (term "reasonable cause" as used in an administrative rule relating to eligibility for vocational assistance "requires, in part, a policy determination that we review in light of the legislature's delegation to the director of the responsibility for resolving vocational assistance disputes"). Those cases are distinguishable. Determining the nature of a term, whether it is exact, inexact, or delegative, necessarily depends on the context in which the term is used and whether it shows an intention by the legislature to require a policy determination by an agency of a legislative nature. *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 590, 341 P3d 701 (2014); *Vickers/Nelson & Assoc. v. Environ. Quality Comm.*, 209 Or App 179, 184-85, 148 P3d 917 (2006). Here, the context of the term "reasonable cause" as used in ORS 419B.010(1) does not show an intention to require a policy determination of a legislative nature by the mandatory reporter. Rather, as used in ORS 419B.010, the term "reasonable cause" provides a legal standard by which to determine whether a mandatory reporter has an obligation to report child abuse.

purposes of a law enforcement agency's determination of abuse as "a reasonable belief given all of the circumstances, based on specific and describable facts, that the suspicious physical injury may be the result of abuse").[12] Although, as the district contends, a mandatory reporter's obligation to report suspected abuse is not dependent on the reporter's verification through investigation of the truth of a claim or suspicion of abuse, that does not mean that there is no role for the exercise of judgment in determining whether a report gives rise to a reasonable suspicion of abuse. Indeed, as defined in OAR 413-015-0115(38), the "reasonable suspicion" standard encompasses the exercise of judgment in evaluating the circumstances surrounding a disclosure of alleged abuse. The FDAB did not err in determining that a mandatory reporter can consider the surrounding circumstances and rely on the reporter's training and experience in determining whether a child's report provides reasonable suspicion of sexual abuse.

As noted, respondent testified that, after her conversation with the child, she concluded that any touching or attempted touching by the brother was just horseplay, not sexually motivated, and the FDAB agreed with that assessment. In its order on reconsideration, the FDAB cited ORS 163.305 and its requirement that "sexual contact," for purposes of sexual abuse in the third degree, be "any touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." In rejecting the district's contention that the child's report provided reasonable suspicion of abuse as a matter of

---

[12] The "reasonable suspicion" standard that we concluded in *A. F.*, 251 Or App at 583, is applicable in the evaluation of child abuse under ORS 419B.020 is defined by DHS in OAR 413-015-0115(38) as

"a reasonable belief given all of the circumstances, based on specific and describable facts, that the suspicious physical injury may be the result of abuse. Explanation: The belief must be subjectively and objectively reasonable. In other words, the person subjectively believes that the injury may be the result of abuse, and the belief is objectively reasonable considering all of the circumstances. The circumstances that may give rise to a reasonable belief may include, but not be limited to, observations, interviews, experience, and training. The fact that there are possible non-abuse explanations for the injury does not negate reasonable suspicion."

Both parties cite that rule as setting forth the appropriate legal standard for evaluating "reasonable cause."

law, the FDAB reasoned that the evidence did not support a finding that the child had

> "said anything from which [respondent] could conclude that [the child's] brother was acting for the purpose of arousing or gratifying the sexual desire of either [the child] or her brother. Therefore, this Panel cannot conclude that the evidence demonstrates that [the child] described sexual contact to [respondent]."

As the FDAB implicitly observed, a mandatory reporter's evaluation of whether there has been a report sufficient to give rise to a reasonable suspicion of sexual abuse necessarily encompasses a judgment as to whether the asserted physical contact was sexually motivated. The FDAB believed respondent's testimony that, based on the child's description of the contact, her conversation with the child, her familiarity with the child, and her professional experience and training, the brother's behavior was not sexually motivated. That testimony is substantial evidence in support of the FDAB's finding that the child had not reported sexual abuse and it supports the FDAB's conclusion that respondent did not have reasonable cause to believe that the child had reported sexual abuse.[13]

Finally, we have considered and reject the district's contention in its second assignment of error that the FDAB failed to apply an objective standard in determining whether respondent had reasonable cause to believe that the child was reporting sexual abuse. Although the order did not separately identify those aspects of its evaluation that were based on an objective standard, it is clear from the FDAB's order that the FDAB did in fact apply an objective standard in determining whether respondent had reasonable cause.

Affirmed.

**SHORR, J.,** dissenting.

I respectfully dissent from the majority's conclusion that the FDAB did not err when concluding that respondent

---

[13] In addressing the evidence, the FDAB noted that the district did not present the child or her mother as witnesses at the hearing, had not interviewed the child to determine what she recalled telling respondent, and did not present any evidence concerning the child's recollection of what she had told respondent.

did not have reasonable cause to believe that the child had reported sexual abuse. I would conclude that respondent had reasonable cause to believe that the child had reported sexual abuse and would reverse and remand the FDAB's order for further proceedings in light of its conclusions to the contrary.

I agree with the majority's legal analysis and its recitation of the appropriate test for determining when a mandatory reporter of child abuse has "reasonable cause" under ORS 419B.010(1) to believe that a child has suffered abuse. As the majority correctly observes, we have concluded that "reasonable cause" is equivalent to "reasonable suspicion." *A. F. v. Oregon Dept. of Human Services*, 251 Or App 576, 584, 284 P3d 1189 (2012). I also agree with the majority that a mandatory reporter, acting as an objective person exercising reasonable judgment, does not always have to accept and immediately report, without any further questioning, a third person's or even a potential victim's report of alleged abuse. For instance, an objectively reasonable reporter would not have to report to DHS or law enforcement immediately upon hearing a report from a child of alleged abuse when further questioning made clear that the child had used a term in describing the allegation that the child obviously misunderstood or was squarely contradicted by the additional facts relayed by the child, leading an objectively reasonable person to conclude that there was no reasonable cause to report sexual abuse.

I disagree with the majority and the FDAB's application of the legal standard to the facts here. The basic facts drawn from the record, and noted in the majority opinion, would lead an objectively reasonable person to have a reasonable suspicion that the child had suffered sexual abuse, particularly the report from the child that she had been "molested," that her brother was trying to touch her breast and had touched her upper torso, and that the child confirmed that the touching was "inappropriate." When asked what "molest" meant to her, the child stated that her brother had touched her and indicated generally by waving her hand in front of her upper torso. Respondent told the child's mother that respondent understood from the conversation that the child's brother was "trying to touch a

boob." Respondent also told the child's mother that her son's behavior was "not okay." As noted above, a school resource officer testified that respondent told him that the child confirmed to respondent that the child believed the touching was "inappropriate."

Of course, it is possible that further questioning of a 17-year-old girl with lower cognitive capacity could indicate that the girl had either misunderstood the terms she was using or was not using the terms to indicate that the brother was acting out sexually toward her. The counselor essentially concluded that the brother was being a jerk, harassing an older sister, and engaging in "horseplay." That is at least a possibility that could refute the child's report of being molested and touched inappropriately if drawn from any "specific and describable facts." The problem is that respondent jumped to the conclusion of "horseplay" without relying on or reciting any specific and describable facts from which she could draw that conclusion from the child's description of the events.

In reviewing whether a mandatory reporter reasonably exercised judgment to conclude that there was no reportable abuse, there must be a basis on which to evaluate that judgment. It might be possible for a mandatory reporter reasonably to conclude based on a discovery of additional facts from the child that the conduct was not sexual or sexually motivated. But when, as here, the alleged touching involved an intimate body part and a claim of molestation and inappropriate touching, it is not sufficient for a mandatory reporter simply to state that she formed an opinion that the accused person did not have a sexual intent based on a general assessment from a conversation with the alleged victim; the record must demonstrate some factual basis from which the mandatory reporter could reach that specific conclusion.

Here, respondent provided no description of what she learned from the child during her conversation that led her to conclude, after the child claimed she was molested and touched inappropriately, that the brother did *not* have the requisite intent. Among other things, she did not testify concerning the child's description of the nature of the alleged

conduct, how it occurred, or where it occurred.[1] Respondent's conversation with the mother, who was in a conflicted situation involving her son and daughter, also revealed nothing specific about sexual intent. Respondent knew that the brother was younger, but not so young that one could reasonably infer from his age alone that his intent could not have been sexual. Based on this record and given the "very low evidentiary threshold" of reasonable suspicion, *A. F.*, 251 Or App at 584, respondent's determination that the child's brother did not have a sexual intent appears to have been based on impermissible speculation and did not contradict the child's initial report that she had been "molested" and touched "inappropriately."

For those reasons, I would reverse and remand the FDAB's order based on its erroneous conclusion that respondent did not have an objectively reasonable suspicion to report sexual abuse of a child.

---

[1] While unknown to respondent at the time of her conversation with the child, a school resource officer who later investigated and interviewed the child obtained far more explicit statements from the child that her brother took off her bra and repeatedly touched and mouthed her bare breasts and nipples, which incidents occurred in a bedroom at their mother's house.